BADGER v. PLATTS.

PLATTS v. BADGER.

Under a provision that an insurance policy shall be void if naphtha is "used by the insured on the premises insured," the policy is invalidated if naphtha is used by a tenant of the insured without the latter's knowledge.

A stipulation in an insurance policy, payable in case of loss to a mortgagee, that when no liability exists as to the mortgagor the company may pay the debt due to the mortgagee, and take an assignment of the mortgage and the debt thereby secured, is binding upon one who took the policy by assignment.

In such case the debt is not extinguished, and the mortgagor cannot redeem without paying to the holder of the note the full amount due thereon.

(1) PETITION, for the determination of the amount due on two real estate mortgages, and (2) WRIT OF ENTRY to foreclose the mortgages. Facts agreed. June 24, 1892, the mortgaged premises were conveyed to Melvin Badger, who assumed the payment of a note for $1,500 held by Gilman Clough, secured by a mortgage of the premises, and a note for $1,800 held by Freeman N. Thurber, secured by a second mortgage of the premises. The buildings were insured for $2,000 in the North British & Mercantile Insurance Co., payable in case of loss to Thurber, second mortgagee, as his interest might appear, subject to prior payment to Clough as his mortgage interest might appear; and in the Phœnix Assurance Co. for $700, payable in case of loss to Thurber as his mortgage interest might appear. Both policies were originally issued to Thurber, and were assigned to Badger, the companies assenting thereto.

July 24, 1892, the buildings were destroyed by fire. Before and after the conveyance to Badger, a portion of the buildings was occupied by a tenant, and used as a laundry. Naphtha or gasoline was used to run an engine in the laundry, and the fire was caused by an explosion of naphtha while being lighted by an employee of the tenant. This use of naphtha was unknown to Clough, and Badger claimed it was unknown to him. Proper proofs of loss were made to both companies. The North British & Mercantile Co. claimed that the fire was caused by the unauthorized use of naphtha or gasoline on the premises.

September 21, 1892, Augustus Champlin, resident secretary of the North British & Mercantile Co., without the knowledge or consent of Badger, paid Clough $1,528.75, the amount due on his note less additional premium charged for extra risk from use of naphtha. Clough indorsed the note without recourse, and

assigned the mortgage securing it to Champlin as resident secretary. September 22, 1892, Champlin paid Thurber $443.75 which Thurber indorsed on his $1,800 note. When these payments were made, Champlin received from Clough and Thurber the sum of $27.50 as additional premium for extra hazard incurred by reason of the use of naphtha on the premises. September 22, 1892, Champlin, without the knowledge or consent of Badger, sold the Clough note to Platts for $443.75, indorsed it without recourse, and assigned the mortgage securing it to Platts. At that time the $1,800 note and mortgage were held by the New Hampshire Trust Company as security for a note on which Platts was holden as a signer with Thurber. Platts paid the Trust Company note and took the collateral, thus becoming the holder of the $1,800 note and the mortgage securing it.

It is agreed that there was due on the $1,800 note, January 23, 1893, $506.15. Platts contended that there was due him on the Clough note the full amount thereof, while Badger contended that the payment to Clough by Champlin extinguished the mortgage debt, and that nothing is due thereon.

The policy of the North British & Mercantile Insurance Co. was the New Hampshire standard form of policy and contained the following provisions:

(1) "This policy shall be void . . . if camphene, benzine, naphtha, or other chemical oils or burning fluids shall be kept or used by the insured on the premises insured, except that what is known as refined petroleum, kerosene, or coal oil, may be used for lighting."

(2) "If this policy shall be made payable to a mortgagee of the insured real estate, no act or default of any person other than such mortgagee or his agents or those claiming under him, shall affect such mortgagee's right to recover in case of loss on such real estate; provided, that the mortgagee shall, on demand, pay according to the established scale of rates for any increase of risks not paid for by the insured; and whenever this company shall be liable to a mortgagee for any sum for loss under this policy, for which no liability exists as to the mortgagor, or owner, and this company shall elect by itself or with others, to pay the mortgagee the full amount secured by such mortgage, then the mortgagee shall assign and transfer to the companies interested, upon such payment, the said mortgage together with the note and debt thereby secured."

*Sulloway & Topliff*, for Badger.

*Edwin F. Jones*, for Platts.

CLARK, J. Platts is the holder of the two notes assumed by Badger and the mortgages securing them. It is agreed that the

amount due upon the $1,800 note was $506.15 on January 23, 1893. The only question, therefore, is whether the payment of the amount due upon the $1,500 note to Clough as mortgagee, by Champlin as agent of the North British & Mercantile Insurance Co., and the assignment by Clough to Champlin of the mortgage securing the note, was a payment of the mortgage debt for the benefit of the mortgagor, or a purchase by the company which subrogated them to the rights of the mortgagee. There is due to Platts the full amount of the Clough note, or nothing.

The use of naphtha on the premises without the knowledge or agency of Clough, or any one claiming under him, had no effect upon the policy of insurance as to him, and his interest as mortgagee was insured at the time of the fire. By the terms of the policy, the company had the right to protect themselves by paying the amount due upon the mortgage note and taking an assignment of the mortgage, which they did. By virtue of the assignment the company was invested with the rights of Clough as mortgagee, and could have proceeded to foreclose the mortgage against Badger, the owner of the equity of redemption. The note having been purchased by Platts and the mortgage assigned to him, he stands in the place of the company.

Badger having purchased the equity of redemption and accepted an assignment to himself of the policy issued to Thurber, the assignment having been made with the company's assent, stands in the same position as if he had applied for the policy and made the contract of insurance with the company. It is immaterial whether he knew naphtha was used in the building. Its use was prohibited by the terms of the policy, and it was the duty of Badger, who must be held to have contracted that it should not be used, to know whether that condition was complied with. The use of naphtha by the tenant invalidated the policy so far as Badger was concerned, whether he knew of its use or not. *Wheeler* v. *Insurance Co.*, 62 N. H. 326 and 450.

At the time of the fire, the policy was void as to Badger and valid as to Clough. By accepting an assignment of the policy containing the provision that no act or default of any person other than the mortgagee, or his agents, or those claiming under him, should affect his right to recover in case of loss, Badger became bound by that contract, and party to the agreement that the company, if they should so elect, might pay the mortgagee's claim and take an assignment of the mortgage. This payment was not intended or understood to be such as would extinguish Badger's debt and discharge the mortgage, but operated to satisfy Clough's claim and assign the mortgage to the company, leaving it in full force against Badger.

In *Allen* v. *Insurance Co.*, 132 Mass. 480, the policy provided that the insurance " as to the interest of the mortgagee

only therein" should not be invalidated by the acts of the mortgagor; and that when a loss after a forfeiture was paid to the mortgagee, the company should be subrogated to his rights under the mortgage to the extent of such payment, and might pay the full amount of the debt to the mortgagee and receive an assignment of the mortgage. The court say: "The policy provided that the amount due for a loss after a forfeiture shall not be a fund for the payment of the mortgage debt, but that, upon payment of the loss, the mortgage shall be a fund for the reimbursement of the defendant. The contract is, that after a forfeiture the insurance shall be exclusively for the benefit of the mortgagee; that the mortgagor and those claiming under him shall have no beneficial interest in the policy, and that payment to the mortgagee shall not discharge the mortgage, but subrogate the defendant to the mortgagee's right in it. It was a contract which the parties were competent to make, and we know no reason why they should not abide by it." To the same effect are *Eliot Savings Bank* v. *Commercial Union Co.*, 142 Mass. 142, and *Springfield Ins. Co.* v. *Allen*, 43 N. Y. 389.

As the amount paid to Clough by the insurance company was not paid in discharge of the mortgage, Platts's claim under the mortgage is the amount of the mortgage note.

*Case discharged.*

All concurred.

---

Hillsborough,
    Dec., 1894.

