NEW HAMPSHIRE FIRE INS. CO. OF MANCHESTER, N. H., et al. v. NATIONAL LIFE INS. CO. OF MONTPELIER, VT.

(Circuit Court of Appeals, Eighth Circuit. November 11, 1901.)

No. 1,556.

1. INSURANCE—MORTGAGE CLAUSE—RIGHTS OF INSURER IN SECURITIES HELD BY MORTGAGEE.

A provision in a mortgage clause of an insurance policy that in case the company shall pay the mortgagee any sum for a loss under the policy, and claim that it was not liable therefor to the mortgagor, it shall at once be subrogated to the rights of the mortgagee under any security held by it "on the property in question" for the payment of the mortgage debt, does not have the effect of making the insurance company a surety for the payment of the mortgage debt, nor give it any rights with respect to securities held by the mortgagee, until it has paid a loss under its policy to the mortgagee. It cannot, where it is carrying a part of the insurance on the property and contesting its own liability for a loss under its policy, insist that the mortgagee shall not make any settlement deemed advantageous with other insurers, unless with its consent; nor is it entitled, after it has been compelled by suit to pay its share of the loss, to claim that the mortgagee shall be charged on the mortgage debt with more than was received under such settlement, even if it has any right in such case to an interest in any security other than that "on the property in question."

2. SAME—RIGHTS OF INSURER IN MORTGAGE SECURITY—SUMS CHARGEABLE TO MORTGAGEE AS PAYMENTS.

Separate suits were brought in a state court by mortgagors of property and by a mortgagee on the same policies of insurance covering the property. Such suits were consolidated and tried together, the mortgagors and mortgagee being treated as joint plaintiffs, and resulted in judgments against the several defendants. Pending such suits, other

insurers of the property, against whom judgments had been recovered in a federal court on removal, paid such judgments to the mortgagee and took assignments subrogating them to a proportionate interest in the mortgage security. After the rendition of the judgments in the state court, the attorney for the mortgagors therein filed notices of his claim to a lien for fees, and such fees were allowed by the court and paid from the amount recovered; the remainder being paid to the mortgagee. *Held,* that the insurers who had previously been subrogated to an interest in the mortgage were not entitled to have the amount of such attorney's fees charged to the mortgagee as a payment on the mortgage debt, either on the ground that the mortgagors had no legal interest in the judgments recovered which entitled their attorney to payment therefrom, since the decision of the state court on that question was conclusive, or because the mortgagee failed to appeal from the allowance, their assignment, which antedated such allowance, giving them an interest in the matter which entitled them to contest the allowance on their own behalf; nor was the mortgagee bound to appeal in their interest, unless indemnified against its costs and expenses.

**5. SAME—ATTORNEY'S FEES.**

A mortgagee was compelled to bring actions on policies of insurance to recover for a loss on the mortgaged property, such policies having been taken by the mortgagors for its benefit as additional security. Some of the insurance companies, on payment of the judgments recovered against them, were subrogated to a proportionate interest in the mortgage debt and security. *Held* that, as between them and the mortgagee, the latter was entitled to pay its reasonable attorney's fees incurred in such actions from the proceeds of the insurance before applying such proceeds on the mortgage debt.

Appeal from the Circuit Court of the United States for the District of Nebraska.

The appeal in this case arises out of the following facts: Conrad Bohn and William G. Bohn, in September, 1888, executed a mortgage in favor of the National Life Insurance Company, the appellee, whereby they conveyed certain property, with improvements thereon, which were situated in Douglas county, Neb., to secure the payment of their notes to the amount of $25,000. The Bohns agreed to keep the improvements on the mortgaged property insured to the amount of $25,000 for the security of the mortgagee, and in pursuance of that agreement took out policies for the following amounts in the following companies: In the North British & Mercantile Insurance Company, $1,500; in the Norwich Union Fire Insurance Company, $3,500; in the Syndicate Insurance Company of Minneapolis, Minn., one of the appellants, $5,000; in the New Hampshire Fire Insurance Company of Manchester, N. H., one of the appellants, $2,500; in the Glens Falls Insurance Company of New York, $7,500; and in the Hanover Fire Insurance Company and in the Citizens' Fire Insurance Company, $5,000. On March 12, 1891, the improvements on the mortgaged property were destroyed by fire, the mortgagee having up to that time made payments on the mortgage indebtedness to the amount of $4,657. On November 17, 1892, the Glens Falls Insurance Company settled its policy by paying the sum of $7,700, of which amount $7,035 was paid to the National Life Insurance Company, and credited on the mortgage debt, while the residue, amounting to about $666, was paid to the Bohns; they claiming to have an insurable interest in the property which was covered by that policy. On July 14, 1891, the Bohns instituted suits against all of the aforesaid companies to recover the amount alleged to be due on their respective policies in the district court of Douglas county, Neb.; and on December 21, 1891, the National Life Insurance Company, as mortgagee, also brought suits against said companies on the same policies, claiming the sums due thereon in its own right as mortgagee. The actions against the Syndicate Insurance Company and against the New Hampshire Fire Insurance Company were subsequently removed to the federal court for the district of Nebraska and were there tried, resulting in judgments against the last-named companies. The other actions remained in the state court and were

there tried, resulting eventually in judgments against the several insurance companies. All of the judgments so recovered against the several insurance companies have heretofore been paid. On April 20, 1895, when the New Hampshire Fire Insurance Company and the Syndicate Insurance Company paid the judgments that had been recovered against them, respectively, the National Life Insurance Company, to whom the payments were made, assigned to the New Hampshire Fire Insurance Company one-tenth, and to the Syndicate Insurance Company two-tenths, of its interest in the Bohn mortgage as that interest existed at the date of the fire. Omitting the recitals, the material part of these assignments—both of them being alike, except as to names, the amount of money received, and the interest assigned—was as follows:

"Now, therefore, in consideration of twenty-seven hundred seventy-one and 51/100 dollars, this day paid to the National Life Insurance Company of Montpelier, Vermont, mortgagee under said mortgage clause, by the said New Hampshire Fire Insurance Company, the receipt whereof is hereby acknowledged, said sum being in full settlement of said company's liability to said mortgagee by reason of said loss and damage under the said policy, said National Life Insurance Company, mortgagee, does hereby assign, set over, transfer, and subrogate to the said New Hampshire Fire Insurance Company one-tenth of all the right, title, claim, and interest which said National Life Insurance Company had in said mortgage or trust deed above described at the time of said fire, and in and to the note or notes therein described; and it is agreed that all interest which hereafter accrues upon said mortgage to the extent of the proportion aforesaid shall inure and be paid to said insurance company, and that no release of any kind for any amount of said notes or mortgage, or any part thereof, shall be made by said trustee or mortgagee until said company shall have received therefrom the sum paid said mortgagee as aforesaid, with the interest thereon at the same rate as provided in and by said notes from the date thereof until paid, subject, only, to the rights of the said mortgagee to the balance of its claim to be first paid from such security."

In July, 1891, the National Life Insurance Company brought an action to foreclose the aforesaid mortgage, but the proceedings in that case, after the filing of the bill, were stayed until the termination of the litigation in the various suits which were brought as aforesaid to collect the insurance. After the latter litigation was ended, and the judgments against the various insurers had been collected, the National Life Insurance Company on May 2, 1898, filed an amended and supplemental bill in the foreclosure case, wherein it prayed that an account might be taken of the moneys which it had collected from the various insurance companies which had risks on the mortgaged property, that the sum still due to it on the mortgage debt might be ascertained, and that the mortgaged premises be sold to satisfy the balance of the debt which was ascertained to be due. The New Hampshire Fire Insurance Company and the Syndicate Insurance Company, which had at that time changed its name and become the Minnesota Fire Insurance Company, each filed an answer to the supplemental bill and also a cross bill. By these pleadings they alleged, in substance, that nothing was due to the National Life Insurance Company on account of the mortgage indebtedness; that out of the moneys realized from the insurance policies it had either made or suffered improper payments to be made to the Bohns and to certain attorneys who had prosecuted the insurance suits; that, if the National Life Insurance Company was denied credit for these improper outlays, it would be found that it had received payment in full of the mortgage debt; and that by virtue of the assignments aforesaid a considerable sum of money would be found to be due to them, for which they, rather than the National Life Insurance Company, were entitled to a lien on the mortgaged property and to have the same sold for their benefit. A trial was had upon these issues, which resulted in a finding by the trial court that the sum of $2,721.28 was still due on the mortgage to the National Life Insurance Company, and that it was entitled to the greater part of the credits which it claimed. The New Hampshire Fire Insurance Company and the Minnesota Fire Insurance Company have appealed from this decree.

A. S. Churchill, for appellants.

Frank H. Gaines (James E. Kelby and John A. Storey, on the brief), for appellee.

Before SANBORN and THAYER, Circuit Judges, and ADAMS, District Judge.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The first claim made by the appellants is that, out of the sum of $7,700 which was paid by the Glens Falls Insurance Company to settle its share of the loss that was occasioned by the destruction of the improvements on the mortgaged property, $666.55 was improperly paid to the Bohns, the mortgagors, which should have been retained by the National Life Insurance Company, the appellee, and that, because it suffered this sum to be paid to the Bohns, it should be treated as money received by itself and credited as a payment on the mortgage indebtedness in the accounting between it and the appellants. The circumstances attending the settlement with the Glens Falls Insurance Company were as follows: That company was sued upon its policy by the National Life Insurance Company, along with the other fire companies, on July 14, 1891; but in November, 1892, it professed a willingness to settle its policy for the sum of $7,700, provided the mortgagors, as well as the mortgagee, released their claim under the policy. The mortgagors, as it seems, claimed the sum of $666.55 as due to them under the policy in addition to what was due to the mortgagee, and would not execute a release unless that amount was paid to them, whereupon it was arranged that they should receive the sum demanded, and it was accordingly paid. At this time the appellants were defending the actions which had been brought against them by the National Life Insurance Company, and were denying any liability on their respective policies, and they did not pay the sums due thereon until April 20, 1895, after judgments had been recovered. Besides, it appears that the Glens Falls Insurance Company carried only three-tenths of the total insurance on the mortgaged property, and all of the policies, as we understand the record, contained the usual provision that the several insurers should respectively contribute to the payment of any loss which might be sustained in the proportion that their several policies bore to the total amount of the insurance. By virtue of this provision the Glens Falls Company was liable to the mortgagee for only three-tenths of the sum due on the mortgage at the time of the fire, and as the sum so due was about $21,201.36, it would seem that the sum which was actually paid to the National Life Insurance Company on November 17, 1892, by the Glens Falls Company, to wit, the sum of $7,035, was a little more than the mortgagee was equitably entitled to demand of the Glens Falls Company at that time on account of its interest as mortgagee. This fact, that the mortgagee received as large a sum from the Glens Falls Company as it was equitably bound to pay on account of the mortgagee's interest in the insured property,

is sufficient in itself to show that there is no substantial foundation for the claim now made by the appellants that the sum of money which was paid to the Bohns should be charged to the National Life Insurance Company, and treated as a payment made to it on the mortgage indebtedness in an accounting between the mortgagee and the appellants.

But that contention cannot be sustained for another reason. The theory of the appellants is that, because their respective policies contained in the mortgage clause a provision to the effect that, whenever either company paid to the mortgagee any sum for a loss under its policy and claimed that it was under no liability to the mortgagors, it should at once be subrogated to the rights of the mortgagee under any securities held by it "on the property in question" for the payment of the mortgage debt, this provision in effect made them sureties for the payment of the mortgage debt and armed them with all the rights of sureties. They further claim that, if the mortgagee held policies issued by other companies covering the mortgaged property, it could not make a settlement with the other insurers without obtaining the consent of the appellants, or, at least, that if it did make such a settlement, and accepted less than it was legally entitled to recover, it did so at its peril, and that the appellants, as sureties, are privileged to challenge the settlement, and insist that the mortgagee be charged with the sum it ought to have received, and to do so at any remote period, when they found it convenient or necessary to settle their own policies. We are of opinion that this is an erroneous view. The provision found in the mortgage clause did not make the appellants sureties for the payment of the mortgage indebtedness, and did not purport to place them in that relation. As above stated, it provided, in substance, that when they paid the mortgagee any sum for a loss under the policy, and claimed that they were not liable to the mortgagors, then, and not before, they should be subrogated to the rights of the party to whom payment was made as respects all securities held by such party on the "property in question" to secure the payment of the debt. This doubtless gave to the appellants the right to pay their proportion of the loss to the mortgagee, and claim subrogation as respects the mortgage existing on the property; but it did not give them the right to contest the payment of their own policies, denying all liability thereon, and at the same time insist that the mortgagee should not make a settlement with other insurers, for less than the face of their policies, without their consent. If the appellants desired to avail themselves of the right of subrogation which was reserved to them by the mortgage clause, and to acquire an interest in the mortgage, so as to be able to dictate or control settlements with other insurers, they should first have paid their respective losses. Until they did pay their own losses, the mortgagee was entitled to make any settlement with the other insurers which it deemed fair and just without consulting the wishes of the appellants. In the case of Insurance Co. v. Stinson, 103 U. S. 25, 28, 26 L. Ed. 473, it was said:

. "Where a creditor effects insurance on property mortgaged or pledged to him as security for the payment of his debt, the insurers do not become sureties of the debt, nor do they acquire all the rights of such sureties. * * * A surety of the debt might complain if the creditor should surrender to the debtor collateral securities; but an insurer of the property for the benefit of the mortgagee would have no just ground of complaint. True, after a loss has occurred and the insurance has been paid, sufficient to discharge the debt, the insurers may be entitled to be subrogated to the rights of the creditor against the debtor, and to any collateral securities which the creditor may then hold and which are primarily liable for the debt before the insurers. But even then we do not think that the creditor is bound to take any active steps to realize the fruits of a collateral, or to keep it from expiring, unless the insurance be first paid and notice be given to him of a desire on the part of the insurers to be subrogated to his rights, with a tender of indemnity against expenses."

These views are strictly applicable to the case at bar, and establish the proposition that the appellants, notwithstanding the provision in the mortgage clause, did not occupy the attitude of sureties with respect to the mortgage indebtedness, and that the right of subrogation did not arise until they had paid the losses incurred under their respective policies, which losses were not paid until long after the Glens Falls policy was settled. For these reasons we concur in the view, which was expressed by the lower court, that, as respects the Glens Falls insurance, the sum paid to the mortgagors ought not to be regarded as a sum paid to the mortgagee and charged against it as a payment in its accounting with the appellants.

The next proposition contended for by the appellants is that, in the accounting between themselves and the National Life Insurance Company, the latter company should be charged with the sum of $1,127, which sum, as it is claimed, was erroneously paid to Byron G. Burbank, an attorney at law, out of the moneys collected from the various insurance companies on their policies. This payment to Burbank was made under the following circumstances: Burbank was the attorney of record for William G. and Conrad Bohn, the mortgagors, in all of the insurance suits, both those which were tried in the federal court and those that remained in and were tried in the state court. On or about February 15, 1894, Burbank filed a claim for an attorney's lien on the sums due under the policies for services rendered in enforcing the collection of the same. Such a claim was filed in three of the actions that were pending in the state court. In one of the cases an allowance was made in his favor in the sum of $420, in another in the sum of $600, and in another in the sum of $107. No opposition appears to have been made by any one to the allowance of these several demands for legal services rendered for and in behalf of the Bohns, although a notice of the claim which was filed in one of the cases appears to have been served by Burbank upon the attorney who now represents the appellants. The several claims as made by Burbank were allowed by orders of court duly entered of record in the several cases in which the claims were preferred, one on October 22, 1896, and the other on January 9, 1897.

The contention of the appellants with respect to the sum paid to Burbank may be stated as follows: That the Bohns had no interest in the policies upon which they caused suits to be instituted by Burbank, because they had sold and conveyed the insured property prior to the fire; that by reason of such conveyance they had no right to an allowance for counsel fees out of the moneys recovered on the policies; that the National Life Insurance Company should have resisted the claim; and that, as it did not do so, it should now be charged with the sum erroneously paid to Burbank. We have not been able to concur in this view of the law for the following reasons:

The allowances were made in the several cases pending in the state court, and it appears to have been held by the state court that the Bohns did have an insurable interest in the property covered by the policies, and that they were entitled to maintain actions on the same and to recover for their own benefit whatever was due thereon in excess of the amount of the mortgage indebtedness. Insurance Co. v. Bohn, 48 Neb. 743, 750, 751, 67 N. W. 774, 777, 58 Am. St. Rep. 719, 724, 725. The suits that were brought by the Bohns and those that were brought by the National Life Insurance Company were consolidated for trial in the state court, so that in that court the mortgagors and the mortgagee were treated as joint plaintiffs; and while the amount which each plaintiff was entitled to recover was not formally stated in the several judgments, yet when the court allowed the claims of Burbank for services rendered for and in behalf of the Bohns, and directed them to be paid out of the sums recovered, that was in effect an adjudication that the mortgagors were at least entitled to so much of the sums recovered as were awarded to their attorney. As this was an adjudication of a question which was properly before the state court for determination, the ruling made thereon must be accepted as conclusive. The state court adjudged, in effect, that the sum which it ordered to be paid to Burbank was not due to the National Life Insurance Company, but to the mortgagors; and, even if it should be conceded that this ruling was erroneous, yet such concession would afford no sufficient reason for charging the National Life Insurance Company with a sum of money which was not paid to it and which it was not allowed to recover.

Nor are we able to decide that the National Life Insurance Company should be charged with the sum of money in question because it did not appeal from the orders making the allowances in favor of Burbank. These orders were made after the appellants had paid their own policies and had become subrogated to an interest in the mortgage by a formal assignment of an interest amounting to three-tenths. It was their duty to appear and object to the allowances if they deemed them erroneous, and the fact that they did not so appear, or request the National Life Insurance Company to appear, and object thereto, and that they did not tender to the latter company any indemnity against the costs and expenses which would be incurred by taking such appeal, effectually prevents them at this time from making any objections to the allowances within the doc-

trine heretofore quoted from Insurance Co. v. Stinson, 103 U. S. 25, 28, 26 L. Ed. 473.

Another objection was made by the appellants in the trial court, and is renewed here, to a payment in the sum of $2,500, which the National Life Insurance Company made to its attorneys for long and laborious services rendered by them in prosecuting the numerous suits to final judgments. The trial court sustained this exception to the extent of reducing the credit claimed to the sum of $600, which latter amount it considered a reasonable allowance for services that had been rendered in behalf of the National Life Insurance Company in collecting the amount due from the Glens Falls Insurance Company. We perceive no reason whatever why the National Life Insurance Company should not be allowed credit in its accounting with the appellants for this latter sum, and we think it most probable that the appellants would have had no just ground for complaint if a greater credit had been allowed. However, as the appellee took no exception to the action of the lower court, and has not appealed, we are not called upon to decide whether an error to its prejudice was committed.

No other questions are presented by the record which in our judgment deserve special notice, and the decree below is accordingly affirmed.