# CHARLESTON

## GILLESPIE *v.* SCOTTISH UNION & NATIONAL INS. CO.

Submitted June 14, 1906.    Decided December 18, 1906.

1. INSURANCE—*Subrogation of Insurance—Payment of Loss to Mortgagee.*

   K. borrowed from B. B. & L. Association $400 and gave deed of trust on house and lot to secure the loan and bound herself to keep insurance on the building to amount of $400 for the benefit of the Association, and in case of failure to insure, the Association to insure and add premiums, paid by it, to the debt. K. conveyed the property to G. who assumed to pay the trust debt as part of the purchase consideration. No notice was given to the Association or Insurance Company of such conveyance. More than two years after the conveyance to G. the Association purchased insurance of $400 on the property from the S. U. & N. Insurance Co. in the name of K., the policy containing the usual mortgage clause and

stipulating that the policy should continue good as to the mortgagee, notwithstanding any forfeiture by the owner and that if any loss should be paid to the mortgagee under such circumstances the insurer should be subrogated to the rights of the mortgagee under the mortgage. The insured property was destroyed by fire. G. complied with none of the requirements of the policy by giving notice of the fire or making proofs of loss or otherwise. The insurer paid the Association $398.62, the amount of its debt, and took an assignment thereof. *Held:* That it was entitled to be subrogated to the rights of the Association and to enforce the mortgage. (p. 170.)

2.  SAME—*Policy—Interest in Proceeds.*

A mortgagor has no interest in the proceeds of a policy insuring the mortgagee, taken out by the mortgagee to protect his own interest and in which the interest of the mortgagor has been forfeited, leaving that of the mortgagee still in force. (p. 176.)

3.  COMPROMISE AND SETTLEMENT—*Necessity of Acceptance.*

In the matter of a disputed claim between R. and G., R., the claimant, proposed in writing on April 7th as a compromise, that if G. would pay $100, R. would accept it in full of the claim, and release his mortgage lien on property securing the debt. On the 12th of May following, not receiving a response from G, R. sold the debt to S. U. & N. Ins. Co., assigned the same and subrogated the assignee to the rights of the mortgagee. In a proceeding by the assignee to enforce the mortgage it is error for the court to enforce the compromise offered by R., but which was never accepted by G. (p. 178.)

Appeal from Circuit Court, Tucker County.

Bill by C. D. Gillespie against the Scottish Union & National Insurance Company and others. Decree for plaintiff, and the insurance company appeals.

*Reversed. Appeal Dismissed.*

CUNNINGHAM & STALLINGS, for appellant.

GEO. P. SHIRLEY and E. D. TALBOTT, for appellee.

McWHORTER, PRESIDENT:

Lena Kantorowitz borrowed from the Baltimore Building & Loan Association upon four shares of stock the sum of $400.00, and together with Harry Kantorowitz, her husband, conveyed to C. O. Strieby, trustee, lot No. 108 in the town of Thomas in Tucker county, to secure the payment of said sum of money according to the terms of such loan. Said loan and deed of trust were made and executed on the 18th

day of November, 1897.   As a further security for said loan
the buildings on the said lot were insured by the said Kan-
torowitz in the sum of $500.00 and it was provided in said
deed of trust that the said property should be kept insured
by the said Kantorowitz in the sum of at least $400.00 for
the benefit of said loan association.     When the said insur-
ance expired said Kantorowitz failed to reinsure the property
and the same was reinsured by the said Building & Loan
Association for its benefit in the name of said Kantorowitz in
the Scottish Union & National Insurance Company.   On the
28th day of January, 1899, said Lena Kantorowitz and her
husband conveyed the said property to C. D. Gillespie in
consideration of the sum of $338.00 paid by him in cash and
as further consideration he assumed to pay off the remainder
of the loan to the said Building & Loan Association, amount-
ing at that time to about $362.00, making a total considera-
tion of $700.00.   On the 12th day of November, 1901, the
building on the said lot was destroyed by fire and on the 12th
day of May, 1902, the said Insurance Company paid to said
Building & Loan Association $398.62 the amount of its debt
and took an assignment thereof from the said Building &
Loan Association, whereby the said Insurance Company
claimed to be subrogated to the rights of said Building &
Loan Association.   C. O. Strieby, the trustee in said deed of
trust, at the instance of said Insurance Company, as assignee
of said Building & Loan Association, advertised to sell said
property under said deed of trust to satisfy said debt.   C. D.
Gillespie, the vendee of said Kantorowitz, filed his bill in
equity in the circuit court of Tucker county, praying that
said Strieby, trustee, and the Scottish Union & National In-
surance Company be perpetually enjoined and restrained
from selling said lot, No. 108, under said trust deed and that
the lien created upon said property by reason of said trust be
released and for general relief.   An injunction was granted
staying said sale.

The defendant Insurance Company filed its demurrer which
was overruled and tendered its answer to which the plaintiff
replied generally.   Defendant filed with its answer a copy of
the policy issued by it dated the 31st of August, 1901, upon
the property in question in the name of Lena Kantorowitz
for $400.00, which policy contained the following provision:

"This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if any change, other than by death of an insured, take place in the interest, title or possession of the subject of insurance (except of change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured, or otherwise." Said policy also contained a provision that in case fire occurred the insured should give immediate notice of any loss thereby in writing to the Insurance Company, and within sixty days after the fire, unless such time should be extended by the company, should render a statement to the company signed and sworn to by the insured stating the knowledge and belief of the insured as to the time and origin of the fire and make full proof of his loss by such fire. The policy also contained the usual mortgage clause, making the loss or damages, if any, payable to Robinson and Barton, receivers of the Baltimore Building & Loan Association, as their interest might appear; and providing that the insurance should not be invalidated as to the interest only therein of the said receivers by any act or neglect of the mortgagor or owner of the property, nor by any change in the title or ownership of the property. The answer further averred that on the 12th day of May, 1902, the defendant Insurance Company paid to the receivers of the Baltimore Building & Loan Association the sum of $398.62, the amount of their debt against the property and took an assignment thereof and filed with its answer a copy of said assignment bearing date the said 12th day of May, 1902; and denied the allegation of the plaintiff's bill that the debt only amounted to $232.00 and averred that the correct amount was that paid by defendant to the receivers, and averred that plaintiff gave no notice of the fire or complied with any of the requirements of the insurance policy in relation thereto.

Depositions were taken and filed in the cause by the plaintiff and the defendant. Plaintiff with his depositions filed two letters from Bird M. Robinson, co-receiver of the Baltimore Building & Loan Association, to himself concerning the loss. The first letter dated March 18, 1902, informing plaintiff that the debt of Lena Kantorowitz to the association amounted then to $384.46, that the receivers had insurance on the property, but that the Insurance Company claimed that

it was not liable to plaintiff for any sum for the reason that the sale from Kantorowitz to him had not been reported to the Insurance Company and that they believed they could make a compromise settlement with the Insurance Company and proposed that he pay $150.00 in cash and the receivers would release the lien on the lot and cancel the certificate of stock, the balance of the sum due to the association to be paid by the Insurance Company in full satisfaction of the loan and that if he would accept the proposition they would prepare a release and forward without delay; that in the meantime proof of loss must be made and the proper steps should be taken to that end without delay; that if plaintiff did not accept the proposition the Insurance Company would pay the receivers the full amount of the claim and they would subrogate the Insurance Company to their rights as mortgagee and the Insurance Company would then hold the property for the $386.46. The second letter, dated April 7, 1902, acknowledged receipt of plaintiff's note of 27th of March offering to pay $50.00 in full in consideration of the release of the Kantorowitz lot, and stated that they had referred the matter to the Insurance Company which was unwilling to accept the proposition. They then proposed upon payment to them by plaintiff of $100.00 they would release their lien, stating the Insurance Company had authorized them to make such settlement and that as soon as they heard from him they would forward draft and other papers. In his deposition plaintiff says he did not accept their proposition for the reason that they didn't give him time to get a letter to them before he received a notice from the attorneys of the Scottish Union & National Insurance Company that they had a claim against him for $393.00, claiming this the amount due the Baltimore Building & Loan Association on said lot, that they had paid off the same and were subrogated to the rights of the Loan Association.

The case was heard on the 16th of June, 1905, when the court held that the Building & Loan Association through its receivers by the letter of April 7, 1902, proposed and offered to accept from the plaintiff $100.00 in settlement for and in satisfaction of its claim and deed of trust lien on the lot in question, and that before he had an opportunity to accept or reject said offer the said association undertook to assign its

said lien to the Insurance Company and the court being of the opinion from the evidence in the case that the Insurance Company took said assignment with knowledge of said proposition of settlement and could not by receiving said assignment defeat the right of plaintiff to accept said proposition or offer of settlement; that upon the plaintiff within thirty days from that date paying to the said Insurance Company or its attorney the sum of $100.00 with interest from the 7th day of April, 1902, then the said Insurance Company should release the said lien and deed of trust so assigned and such lien on said lot should be discharged, and in case the Insurance Company refused to accept said $100.00 and interest in the satisfaction and discharge of the lien then plaintiff might pay said money to the clerk of the court subject to the future order of the court, and in case said Insurance Company should accept the same it should be entitled to all the rights of plaintiff in the stock of the Baltimore Building & Loan Association assigned by Lena Kantorowitz to plaintiff and the court reserved the right, in case the Insurance Company refused to accept said sum in satisfaction of the lien, to determine thereafter whether it should receive any part of said money and reserved the right to make such future decree to carry out said decree as the court might deem proper and awarded costs to the plaintiff against said Insurance Company. On the 20th day of September, 1905, the case again came on to be heard, when it appearing that the plaintiff had tendered to the Insurance Company said sum of $100.00 and interest, aggregating $119.50, and which had been refused by the company and had been into court as per decree of June 16th the clerk was directed to pay over the same to the Scottish Union & National Insurance Company whenever the company should demand the same after first deducting the proper costs for this proceeding from the $119.50 and ordered that the deed of trust mentioned in the bill be released and appointed George P. Shirley a special commissioner to execute such release within ten days after the rising of the court in case the Building & Loan Association by its proper officer failed to execute such release. From these decrees the Insurance Company appealed.

The principal question in the case is, whether the plaintiff, C. D. Gillespie, had any interest in the insurance. The

property was conveyed to him on the 28th of January, 1899, and the insurance was taken out on the 31st day of August, 1901, in the name of his grantor, Lena Kantorowitz. The fire occurred November 12, 1901. The plaintiff failed to comply with the requirements contained in the policy by giving notice of the fire, by making proof of loss, or otherwise; in fact, he did not seem to know that there was insurance upon the property at all. In *Ulster County Savings Institution* v. *Leake*, 73 N. Y. 161, 29 Am. Rep. 115, it is held: "The plaintiff, as mortgagee, held a mortgage binding the mortgagor to insure for his benefit. The mortgagor procured an insurance, 'loss payable to the mortgagee.' The policy became forfeited as to the mortgagor. The plaintiff had an independent agreement with the insurers, making valid and effectual all their policies held by him as mortgagee, and providing for subrogation if they should become forfeited as to the mortgagor. A loss occurred which the insurers paid to the plaintiff, and the insurers took an assignment of the mortgage, subject to the payment of the balance due the mortgagee. The mortgage was foreclosed, and in a contest over surplus moneys, *held*, that the insurers were entitled to the surplus, the mortgagor having forfeited her rights under the policy and not being injured by the assignment, and the insurers not having waived the forfeiture." The same thing is held in *Foster* v. *Van Reed*, 70 N. Y. 19, 26 Am. Rep. 544. And in *Hare* v. *Headley*, 54 N. J. Eq. 545, it is held (Syllabus points 4 and 5): "Forfeiture of insured's rights by reason of his failure to give notice or proof of loss as required by the policy, cannot be considered waived by the payment of loss to insurer's mortgagee. The insurer having, at the time of payment, claimed that no liability to the insured existed under the policy, and that, under the independent agreement of the insurer with the mortgagee, the insurer was entitled to subrogation to the mortgagee's rights under the mortgage." "An independent contract between the mortgagee of property, for whose benefit the owner insures it, and the insurer, that the insurance shall continue good as to the mortgagee, notwithstanding any forfeiture by the owner, and that if any loss is paid the mortgagee under such circumstances, the insurer shall be subrogated to the rights of the mortgagee under the mortgage, is valid, though

the owner does not know of it." And in Cooley's Briefs on the Laws of Insurance, 3916, it is said: "A rule similar to that governing the insurance of a mortgagee's interest obtains where either by the policy or by separate contract it is agreed that a policy by its terms insuring a mortgagor, with the loss, if any, payable to a mortgagee, shall nevertheless be valid and binding as to the mortgagee in cases in which the insurance has been forfeited as to the mortgagor. Such policies, indeed, generally contain a special stipulation looking to an assignment to the insurer of the whole or a part of the securities held by the mortgagee and paid by the insurer under a loss for which it was not liable to the mortgagor. Evidently, such a contract, so far as the right of subrogation is concerned, is a separate insurance of the mortgagee's interest as to any loss for which the company is not liable to the mortgagor, giving the mortgagor no right to claim a reduction of his debt by the payment to the mortgagee." Citing among many other authorities *Hare* v. *Headley, supra.* In the same volume at page 3700, it is said: "A mortgagor has no interest in the proceeds of a policy insuring the mortgagee, taken out by the mortgagee to protect his own interest, or in which the interest of the mortgagor has been forfeited, leaving that of the mortgagee still in force." Citing in support of this proposition "*Concord Ins. Co.* v. *Woodbury*, 45 Me. 447; *McIntire* v. *Ploisted*, 68 Me. 363; *White* v. *Brown*, 2 Cush. (Mass.) 412; *Burlingame* v. *Goodspeed*, 153 Mass. 24, 26 N. E. 232, 10 L. R. A. 495; *Sterling Fire Ins. Co.* v. *Beffrey*, 48 Minn. 9, 50 N. W. 922; *McDowell* v. *Morath*, 64 Mo. App. 290; *Hare* v. *Headley*, 54 N. J. Eq. 545, 35 Atl. 445; *Dunbrack* v. *Neall*, (W. Va.) 47 S. E. 303. See also *Kortlander* v. *Elston*, 52 Fed. 180, 2 C. C. A. 657, 6 U. S. App. 283; *White* v. *Gilman*, 138 Cal. 375, 71 Pac. 436." And the author further says: "This rule has been held applicable even where the policy in fact effected by the mortgagee alone nominally insured the mortgagor with the loss payable to the mortgagee." Citing *Thomas* v. *Ins. Co.*, 43 Hun. (N. Y.) 218. See also *Harvey* v. *Cherry*, 12 Hun. (N. Y.) 354, affirmed 76 N. Y. 436.

Counsel for appellee cite in support of the decrees 27 A. & E. E. L. 263, the text of which is: "It has been held repeatedly that where a mortgagee, at his own expense, pro-

cures the insurance on the mortgaged property for the better security of his debt, the insurer, if obliged to pay a loss occasioned by injury to such property, may be subrogated to the rights of the mortgagee under the mortgage. But if the mortgagor pays the premiums, or is liable for the same, he is entitled to the benefit of the insurance, and the insurer will not be subrogated to the mortgagee's rights against him, unless the policy of insurance contains an express stipulation that the insurer shall be so subrogated, or the mortgagor has forfeited his rights and the policy has been kept alive for the benefit of the mortgagee on condition that the insurer shall be subrogated."

In the case at bar the insurance policy does contain an express stipulation that the insurer shall be subrogated and it is conceded, at least not questioned, that the policy was forfeited as to the mortgagor, not only by reason of the change of title without notice, but also by reason of the fact that the mortgagor failed to fulfill any of the requirements of the policy after the fire. It is true some of the cases cited under the quotation made from 27 A. & E. E. L. 263, would seem to have a tendency to support the contention of the appellee, but in such cases it is not clear as to the stipulations in the policy or whether the same had become forfeited as to the mortgagor and remained good as to the mortgagee. The great weight of authority is in support of the stipulations in the policy, that while it may be forfeited as to the mortgagor it will be good as to the mortgagee. The policy was clearly void as to both Lena Kantorowitz and C. D. Gillespie. It is very clear that the plaintiff never paid any premiums directly and it does not appear from the record that they were even charged up to him as against the property.

As to the provision in the decree enforcing the proposition made by the Insurance company through the receivers of the Building & Loan Association, the proposition made as a compromise was received by the plaintiff, according to his own testimony, about the 7th of April and he failed to avail himself of it by accepting it within a reasonable time, as it appears that the assignment was not made until the 12th of May, more than a month afterwards, and he does not pretend that he even wrote a letter in reply, and the parties making the proposition had a right to withdraw the proposition at any

:time before acceptance, and when the same was not accepted, within at least a few days, they had a right to presume that the plaintiff would not accept it and the court committed an error in making the compromise between the parties.

For the reasons herein given the decrees complained of will be reversed and the plaintiff's bill dismissed.

*Reversed. Bill Dismissed.*