SURRATT et al. v. FIRE ASS'N OF PHILA-DELPHIA et al.

WILCOX v. GLENN et al.

No. 2959.

Circuit Court of Appeals, Fourth Circuit.

Sept. 19, 1930.

468

Henry E. Davis, of Florence, S. C., for appellants.

Joseph L. Nettles, of Columbia, S. C., for appellees.

Before PARKER, Circuit Judge, and BAKER and SOPER, District Judges.

PARKER, Circuit Judge.

This suit was instituted in the court below by F. L. Wilcox, as receiver of the South Carolina Warehousing Corporation, to foreclose a mortgage on real estate and to obtain judgment on the mortgage debt. John W. Glenn, the original mortgagor, Julia Efird Surratt and W. T. Surratt, who had purchased the mortgaged property and assumed payment of the mortgage debt, and the Fire Association of Philadelphia, the Mechanics' Insurance Company of Philadelphia, and the Commercial Union Assurance Company, Limited, companies which had issued fire insurance policies on mortgaged property which had been destroyed by fire, were made defendants. The bill prayed for judgment and foreclosure, that the amounts due by each of the insurance companies might be determined, and that the rights, interests, and equities of all of the parties might be settled and determined in the suit.

The insurance companies denied liability under the policies on the ground that there had been a change in the title of the property insured in violation of their terms; and the Fire Association of Philadelphia pleaded, also, the provision of its policy to the effect that upon payment to a mortgagee it should, to the extent of such payment, be subrogated to the mortgagee's right of recovery and to his claim upon the collateral held as security for the mortgage debt. On the trial the last-named company admitted its liability to the receiver as mortgagee, but insisted on its right of subrogation. The answers of Julia Efird Surratt and W. T. Surratt admitted that they had assumed the mortgage debt, but alleged, among other things, that, upon their purchase of the mortgaged property, the agent of the insurance companies had agreed to transfer to them the insurance thereon and that they were entitled to the insurance. The insurance companies denied this allegation.

On the trial, the District Judge held that the Mechanics' and Commercial Union policies had been avoided by the change of title relied on; that the Surratts were primarily liable for the payment of the mortgage debt; and that upon the Fire Association of Philadelphia paying to the receiver the amount due under its policy, it should be subrogated to all the rights of the receiver under the judgment rendered against Glenn and the Surratts and be entitled to an assignment of all demands and securities held by him, including the note and mortgage in suit and all rights thereunder. A decree was entered embracing these matters as well as others not here involved; and from same the Surratts have appealed, making only the insurance companies parties to the appeal, and assigning as errors the holdings to which we have referred.

It appears from the evidence that the mortgaged property, a tobacco warehouse in Timmonsville, S. C., had been sold by the receiver to the defendant Glenn and a mortgage had been given for a balance due on the purchase price. The policies in question insured Glenn, as owner, and the receiver, as mortgagee. The Mechanics' and Commercial Union policies bore only ordinary loss payable clauses. The Fire Association policy, however, carried the New York standard mortgage clause, which protected the interest of the mortgagee from forfeiture by act or neglect of the mortgagor. All contained the following provisions:

"This entire policy shall be void unless otherwise provided by agreement in writing added hereto * * * if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance.

"No one shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement added hereto, nor shall any such provision or condition be held to be waived unless such waiver shall be in writing added hereto. * * *

"On payment to a mortgagee of any sum for loss or damage hereunder, if this company shall claim that as to the mortgagor or owner, no liability existed, it shall, to the extent of such payment be subrogated to the mortgagee's right of recovery and claim upon the collateral to the mortgage debt. * * *"

On April 16, 1928, Glenn entered into a written contract with W. T. Surratt, by the terms of which an exchange of property was agreed upon, Glenn was to convey the mortgaged property in question to Surratt, Surratt was to convey to him certain mortgaged property in Winston-Salem, and the mortgage in each case was to be assumed by the person to whom the property was to be conveyed. On May 8, 1928, Glenn, pursuant to this contract, executed a deed conveying the warehouse property to W. T. Surratt, which he deposited in escrow with the C. E. Johnson Realty Company, real estate dealers of Winston-Salem, N. C. At the same time, Surratt and wife executed a deed to Glenn for the Winston-Salem property and Surratt gave Glenn his check for $467.41, which included the estimated difference in loans assumed by the respective parties and also the difference in the unearned insurance premiums on fire insurance policies, which were to be transferred. It was the basis of the trade that Glenn was to assume only $10,000 on the mortgage which had been given by the Surratts on the Winston-Salem property; and his deed to Surratt was left in escrow because, at the time of the settlement on May 8th, he had not been able to obtain from the company holding the mortgage on that property a statement of the amount due under it.

While the deed of Glenn to 'W. T. Surratt was being held in escrow by the C. E. Johnson Realty Company, some one discovered that the title to the property of the Surratts which was being exchanged for the property of Glenn had been held in the name of Mrs. Surratt; and Glenn was requested to allow the name of Mrs. Surratt to be substituted for the name of Surratt in the deed. He consented to this, as did also Surratt; and the substitution was made by someone in the office of the realty company. A short while later, on or about the 19th of July, the exact amount of the mortgage on the Winston-Salem property was ascertained from the mortgage company, and it was found that the Surratts were due an additional sum of $296.23 to Glenn. Surratt on that day gave his note for this amount to the realty company, and the deed was delivered to him, although he seems to have left it in the company's possession and failed to record it. The warehouse was destroyed by fire on August 19th.

Surratt testified that at the time of the trade on April 16th, he notified one Rollins, the local agent of the Mechanics' and the Commercial Union Companies, that he had traded for the warehouse property and that the policies outstanding thereon should be transferred to him, and that Rollins then and there agreed so to transfer them and to attach a rider to that effect. Rollins, on the other hand, testified that he agreed that he would transfer the policies when the trade was carried through and that no transfer was to be made until he was notified that the deal had been consummated. The policies were in the possession of Mr. Wilcox, the receiver, who had the same understanding of the matter as Rollins; and the fact that the riders transferring the policies were not filled out and delivered at the time Surratt had the conversation with Rollins, strongly corroborates the latter's statement that no transfer was to be made until something further should occur. The learned judge below, who saw and heard the witnesses, accepted Rollins' version; and on the record before us we certainly would not be justified in disturbing his finding with regard thereto.

Rollins was never notified of the transactions of May 8th or July 19th, and made no transfer to any one. He was not notified of the substitution of Mrs. Surratt for Surratt as grantee in the deed; and no one testified that he ever agreed to transfer the policies to her. There is no evidence that the agent of the Fire Association of Philadelphia made any agreement whatever to transfer the insurance under its policy.

■ There can be no question that the Mechanics' and Commercial Union policies and the interest of the mortgagor under the Fire Association policy were avoided by the transfer of the property from Glenn to the Surratts. Not only was there a binding contract for the exchange of property entered into between Glenn and W. T. Surratt, under which Surratt took possession of the property covered by the policies [see First Nat. Bank v. Glens Falls Ins. Co. (C. C. A. 4th) 27 F.(2d) 64, 67, and cases there cited],

but it also affirmatively appears that, prior to the destruction of the warehouse by fire, there had been a consummation of the contract by the delivery in escrow of a deed conveying it and finally a compliance with the terms of the escrow and an unconditional delivery of the deed. The fact that the agent of the Mechanics' and Commercial Union Companies may have had notice of the contract between Glenn and Surratt is immaterial; for it is settled law in the federal courts that, where a policy provides that no officer or agent of the company shall have power to waive any of its terms or conditions except by written indorsement, knowledge on the part of the agent does not waive breach of the conditions nor estop the company from insisting upon forfeiture because of such breach. Northern Assurance Co. v. Grand View Building Ass'n, 183 U. S. 308, 22 S. Ct. 133, 46 L. Ed. 213; Booth v. Concordia Ins. Co. (C. C. A. 4th) 30 F.(2d) 20; Great American Ins. Co. v. Johnson (C. C. A. 4th) 25 F.(2d) 847; Northern Assur. Co., Ltd., of London v. Case (C. C. A. 4th) 12 F.(2d) 551.

And we do not think that a case was presented for reformation of the Mechanics' and Commercial Union Policies under the principle laid down by this court in Hutchings v. Caledonian Ins. Co. (C. C. A. 4th) 35 F.(2d) 309. In that case the policy was in the possession of the agent of the company who, upon a change in the title of the property, agreed to make the necessary indorsement to transfer the insurance and protect the owners. Here the policy was not in the possession of the agent; the agreement was, not to make the indorsement forthwith, but only after the deal should be consummated; and there was no agreement whatever to transfer the insurance to Mrs. Surratt, who was the owner of the property when the fire occurred.

■ The fact that the policies were not in the possession of the agent and were not presented to him effectually negatives the position that there was any agreement for the present transfer of the insurance which the agent by neglect or mistake failed to make a part of the policy by written indorsement. And the agreement of the agent to transfer the policies when the trade should be carried through did not create any binding executory contract which equity could enforce on the principle of regarding that as done which should have been done; for, as we have seen, the policies could not be transferred until presented to the agent so that he could at-

tach the written indorsement; and they were never presented to him.

■ Even in jurisdictions where oral waiver is recognized, neither waiver nor estoppel is held to result from the promise of the agent to make changes where the policy is not in his possession and is not presented to him, and where, as here, he is forbidden by the terms of the policy to make changes or waive conditions except by written indorsement. See 26 C. J. 307 and note in 38 A. L. R. at page 643 and cases there cited. Thus in Northam v. Dutchess County, etc., Ins. Co., 166 N. Y. 319, 59 N. E. 912, 913, 82 Am. St. Rep. 655, the facts were that, upon an assignment for the benefit of creditors, the insured saw the agent of the company and asked that the insurance be kept good and the agent agreed to do so. The policy at the time was locked up in the safe of the insured. The court held that no waiver or estoppel resulted, saying:

"This falls short of the facts which sustained the policy in Manchester v. Guardian Assur. Co., 151 N. Y. 88, 56 Am. St. Rep. 600, 45 N. E. 381. In that case the agent agreed to make the necessary indorsement, and failed to do so, although the policy was within his reach for the purpose. The promise, under the circumstances, was held to be either the equivalent of an oral contract for further insurance, or an estoppel precluding the defendant from asserting its own breach of performance. The case before us is not unlike Baumgartel v. Providence, etc., Ins. Co., 136 N. Y. 547, 32 N. E. 990, in which the agent, when informed by the insured that he had obtained other insurance for $1,000 answered, 'All right, I will attend to it,' and we held this was not a compliance with the terms of the standard policy, or waiver of them, *but, at best, but a promise to make the proper indorsement when the policy should be presented to the agent,—an event which did not occur in that case or in this.*" (Italics ours).

■ And apart from the fact that a future transfer of the policies was contemplated and that they were not in the possession of the agent and were not presented to him to be transferred, the agreement relied on could not avail the Surratts, for the reason that it did not provide for the transfer of the insurance to Mrs. Surratt and the title to the property was in her at the time of the fire. It is true that the deed was not reacknowledged or recorded after the substitution of her name as grantee, but there can be no doubt that the effect of the substitution was

to vest in her at least the equitable title to the property. While the deed was held in escrow, there was no delivery to the grantee and the legal title remained in Glenn, the grantor. 21 C. J. 882, 888; Calhoun County v. American Emigrant Co., 93 U. S. 124, 23 L. Ed. 826. As her name was inserted in the deed as grantee before delivery was consummated, there can be no question that upon delivery it conveyed to her the title which remained in Glenn up to that time. The case, on principle, is in no respect different from what it would have been if, after signing the deed, but while it was still in his possession, he had changed the name of the grantee. The conditions of the escrow do not complicate the matter, for the reason that Surratt, the grantee under the deed as originally drawn, consented to the substitution. Certainly the substitution of Mrs. Surratt's name effected a change in the "interest" or "title" of the insured which would have avoided the policy, even if the effect of the agreement relied on had been to transfer the insurance to Surratt.

And there can be no doubt that the learned judge below was correct in rendering a decree in behalf of the receiver against the Surratts for the amount of the mortgage debt, and in holding that, upon payment by the Fire Association of Philadelphia of the judgment rendered against it on its policy, it should be subrogated to the rights of the receiver in and under the judgment and be entitled to an assignment of the securities which he held. Although the mortgage debt was owing to the receiver by Glenn, the Surratts in their pleadings admit that they assumed the payment of same in consideration of the conveyance to them; and the rule applicable in such cases is well stated by the late Judge Sanborn in Silver King Coalition Mines Co. v. Silver King Consol. Mining Co. (C. C. A. 8th) 204 F. 166, 169, Ann. Cas. 1918B, 571, as follows:

"When a grantee contracts with his grantor to pay the latter's debt or obligation in payment, or in part payment, for the conveyance, the creditor or obligee may accept and appropriate that contract to himself and maintain a suit in equity to enforce it. In that event the grantee becomes the principal debtor and the grantor the surety, and the creditor's suit stands on the equitable doctrines that the creditor may have the benefit of any security or obligation given by the principal debtor to the surety, and that to avoid circuity of action—that is to say, an action by the creditor against the original debtor and a subsequent action by the latter against his grantee—the creditor may be, and is in equity, substituted for the promisee, the grantor."

See, also, Cobb v. Interstate Mortgage Corp. (C. C. A. 4th) 20 F.(2d) 786, 788 and cases there cited.

█ While the policy of the Fire Association of Philadelphia as originally issued protected the interest of Glenn, the mortgagor, as well as the interest of the mortgagee, Glenn's rights thereunder were forfeited by reason of the conveyance to the Surratts. The rights of the receiver, as mortgagee, however, were protected by the provisions of the New York standard mortgage clause, notwithstanding the forfeiture of the mortgagor's rights; and upon the payment to him of the amount of the debt, it is clear that the company, under well-recognized principles of equity, is entitled to be subrogated to his rights with respect thereto and to have assigned to it all securities held by him for the enforcement of same. 26 C. J. 461; Carpenter v. Providence Washington Insurance Co., 16 Pet. 495, 10 L. Ed. 1044; Royal Ins. Co. v. Stinson, 103 U. S. 25, 28, 26 L. Ed. 473. In addition to this, the policy here expressly provided for such subrogation and assignment, and there can be no question of the validity of such a provision or of the company's right of subrogation thereunder. 26 C. J. 462; New Hampshire Fire Ins. Co. v. National Life Ins. Co. (C. C. A. 8th) 112 F. 199, 203, 57 L. R. A. 692; Badger v. Platts, 68 N. H. 222, 44 A. 296, 73 Am. St. Rep. 572; Allen v. Watertown Ins. Co., 132 Mass. 480; Springfield Fire Ins. Co. v. Allen, 43 N. Y. 389, 3 Am. Rep. 711; People's Bank v. Ins. Co. of North America, 146 Ga. 514, 91 S. E. 684, L. R. A. 1917D, 868; Gillespie v. Scottish Union Ins. Co., 61 W. Va. 169, 56 S. E. 213, 11 L. R. A. (N. S.) 143.

There was no error, and the decree of the court below will be affirmed.

Affirmed.