**WHOLESALE SPORTS WAREHOUSE COMPANY, Plaintiff,**

v.

**PEKIN INSURANCE COMPANY, Defendant.**

Civ. No. 81–26–D–1.

United States District Court,
S.D. Iowa,
Davenport Division.

June 22, 1984.

Craig D. Warner, Burlington, Iowa, for plaintiff.

Raymond T. Walton and Michael K. Bush, Heninger & Heninger, Davenport, Iowa, for defendant.

## RULING AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

STUART, Chief Judge.

The Court has before it defendant's renewed motion for partial summary judgment on Count I, filed February 23, 1984, and defendant's March 14, 1984, motion for summary judgment on Count III of the amended complaint. Both motions have been resisted and came on for hearing on May 18, 1984.

### Count I

In an Order filed February 27, 1984, denying defendant's prior motion for partial summary judgment on Count I, the Court noted that defendant had made no attempt to show that the consequential damages claimed by plaintiff were not within the contemplation of the parties at the time they made the contract for insurance. On its renewed motion, defendant attempts to make such a showing. Although the Court has doubts about plaintiff's ability to prevail on its consequential damages claim at trial, especially in light of the policy's express exclusion of such damages, the Court does not believe the matter

is so clear as to permit the entry of summary judgment at this time. If the question of consequential damages goes to the jury, however, it will be submitted on special interrogatories. Then, if the jury awards such damages to plaintiff and if the Court determines upon post-trial motion that such damages were not permissible under the evidence, the Court can so rule.

### Count III

In Count III of the amended complaint, which is pleaded in the alternative to Count I, plaintiff alleges that Farmers and Merchants Bank had a secured lien against approximately $104,000 worth of inventory which was damaged in a fire at plaintiff's business premises, and that the lien secured plaintiff's debt to the bank which amounted to about $113,000 on the date of the fire. Plaintiff further alleges that, pursuant to a policy provision giving the bank the right to recover as mortgagee under the policy, defendant paid the bank only about $66,000 (plus interest), whereas the bank should have received the full $104,000 from defendant. Plaintiff seeks an adjudication "that the policy of insurance between plaintiff and defendant affords coverage, without application of affirmative defenses, to Farmers & Merchants Bank as 'mortgagee' of plaintiff's property which was damaged or destroyed in said fire against which it had a secured interest," along with judgment against defendant for approximately $38,000, the difference between the amount defendant paid to the bank and the amount plaintiff claims defendant *should* have paid to the bank. Plaintiff alleges that it has assigned its net recovery in this lawsuit to the bank, and asks that the $38,000 judgment, plus interest, be paid by defendant into a fund to be held by the clerk of this court pending further adjudication between plaintiff and the bank.

Defendant contends in its motion for summary judgment that even assuming the bank was entitled to more than what defendant paid it (which defendant denies), plaintiff cannot obtain a judgment for the difference without regard to affirmative defenses as it seeks to do in Count III. Defendant does not dispute that it would be liable to plaintiff under *Count I* for the difference between the proven loss and the amount paid to the bank *if* defendant is unable to prove any of its affirmative defenses.

Neither party has specifically pointed out the policy provision pursuant to which defendant was obligated to pay the bank for its loss. The Court has therefore scrutinized the insurance policy and discerns only one provision which appears to make any type of loss payable to a mortgagee. That provision, which appears on page 3 of Form MP–4, states in pertinent part:

19. Mortgage Clause—Applicable Only to Buildings. This clause is effective if a mortgagee is named in the Declarations. The word "mortgagee" includes "trustee". Loss to buildings shall be payable to the named mortgagee as interest may appear under all present or future mortgages on the buildings described in the Declarations in order of precedence of mortgages on them.

As it applies to the interest of any mortgagee designated in the Declarations, this insurance shall not be affected by any of the following:

(a) any act or neglect of the mortgagor or owner of the described buildings;

(b) any foreclosure or other proceedings or notice of sale relating to the property;

(c) any change in the title or ownership of the property;

(d) occupancy of the premises for purposes more hazardous than are permitted by this policy;

provided that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee shall, on demand, pay the premium.

.     .     .     .     .

When the Company shall pay the mortgagee any sum for loss under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed,

the Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the mortgagee to whom such payment shall have been made, under the mortgage debt. In lieu of taking such subrogation, the Company may, at its option, pay to the mortgagee the whole principal due or to grow due on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities. However, no subrogation shall impair the right of the mortgagee to recover the full amount of said mortgagee's claim.

Why defendant made payment to the bank for destroyed *inventory* pursuant to this provision, which on its face appears to apply only to loss to buildings, has not been explained. However, as there is no other policy provision which is even remotely applicable, it must be assumed that defendant for some reason chose not to enforce the "loss to buildings" limitation of this loss payable clause, or was estopped from doing so. For purposes of this motion, the Court will assume that the foregoing provision gave the bank the right to be paid by defendant for the approximately $104,000 worth of damaged or destroyed inventory which was subject to its lien.

Plaintiff relies primarily on *Foshee v. Lloyds,* 619 F.2d 1104 (5th Cir.1980) (applying Alabama law), to support a cause of action of the type alleged in Count III. The Court agrees with defendant that *Foshee* does not aid plaintiff. The key issue in the case at bar—whether the mortgagor can sue the insurer *without regard to affirmative defenses* for the difference between the amount paid to the mortgagee and the amount to which the mortgagee was entitled—is simply not addressed in *Foshee.* Although the insurer in *Foshee* had previously raised the possibility of an arson or fraud defense, such defenses were never actually asserted and the primary issue at trial was the amount of the loss. *Foshee* supports the claim asserted by plaintiff in its *own* right under Count I, but there is nothing in that case which suggests that the mortgagor may derivatively

assert the same rights as the mortgagee, as plaintiff seeks to do in Count III. In fact, *Foshee* clearly states that "[i]n the case of a settlement [with the mortgagee] that does not discharge the mortgagor's debt, ... the mortgagee's interest is defined by the stipulation [of settlement]." 619 F.2d at 1109. Thus, it is clear that the mortgagor in *Foshee* was treated as asserting his own interests and rights rather than those of the mortgagee, as the latter had been extinguished by the settlement.

In addition, one of the grounds on which the *Foshee* court distinguished its own case from the case of *Levine v. Insurance Company of North America,* 440 F.2d 679 (5th Cir.1971), was that "Levine involved an independent agreement between the insurance company and the mortgagee for the latter's benefit." *Foshee,* 619 F.2d at 1108–09. This independent agreement in *Levine* was nothing more than a standard mortgagee clause (virtually identical to the one quoted earlier in this opinion from defendant's policy) in the policy between the *mortgagor* and the insurance company. *Levine,* 440 F.2d at 680. As explained in *Levine,* such a clause is deemed to create an independent agreement between the mortgagee and the insurer. *Ibid.* (Citing 5A Appleman, Insurance Law and Practice § 3401 (1970)). Thus, such an independent agreement also existed between the bank and defendant in the case at bar. Apparently, the policy in *Foshee* did not include a standard mortgagee clause. The inclusion or non-inclusion of such a clause is in itself significant.

■ There are two basic types of mortgagee loss payable clauses which may be included in an insurance policy. An "open" or "simple" loss payable clause merely states that loss, if any, is payable to the mortgagee as his interests may appear. Such a clause does not create a new contract with the mortgagee nor abrogate any condition of the policy. The mortgagee is regarded as merely an appointee of the mortgagor to receive the insurance proceeds, and the rights of the mortgagor are

no greater than those of the insured. 5A Appleman, *supra*, § 3401, at 282–84. Thus, under such a clause, the mortgagee's recovery is subject to affirmative defenses based on the acts or omissions of the mortgagor. *Id.* at 293.

■ The other type of clause is the "standard" or "union" mortgagee clause which was included in defendant's policy, quoted earlier. Such a clause, as already mentioned, is deemed to create an agreement between the mortgagee and the insurer which is separate and divisible from the agreement between the mortgagor and the insurer. *Id.* at 289. Under the standard mortgagee clause, "the indemnity of the mortgagee is not placed at the whim of his debtor, and is subject only to breaches of which the mortgagee is, himself, guilty." *Id.* at 292. In addition, under such a clause the insurer is subrogated to the rights of the mortgagee.

■ The question here is: What rights, if any, does the mortgagor have when his separate and divisible agreement with the insurer has been forfeited or avoided by his own acts (e.g., fraud or intentional destruction of the insured property), but the mortgagee's agreement with the insurer remains in effect? The general rule is that "[a] mortgagor has no interest in a policy in which his interest has been forfeited." *Id.* § 3383, at 262. Although the issue has apparently not been addressed in any Iowa case, cases from other jurisdictions hold that when an insurance policy procured by the mortgagor contains a standard mortgagee clause and when the policy is avoided or forfeited as to the mortgagor, the mortgagor has no right to have the funds, paid by the insurer to the mortgagee pursuant to the mortgagee clause, applied to reduce the mortgage debt. *Savings Bank v. Schancupp*, 108 Conn. 588, 144 A. 36 (1928); *see generally Zeiger v. Farmers & Laborers Cooperative Insurance Association*, 358 Mo. 353, 361–62, 214 S.W.2d 426, 428–29 (1948); *Gillespie v. Scottish Union & National Insurance Co.*, 61 W.Va. 169, 173–77, 56 S.E. 213, 215–16 (1906); Annot., 63 A.L.R. 1527 (1929). The reasons for this rule are explained in *Schancupp*, 108 Conn. at 596, 144 A. at 39, as follows:

The effect of this mortgage clause is that from the time the policy becomes void as to the mortgagor the insurance is only in favor of the mortgagee on its interest as such, and not an insurance on the property generally, to which the mortgagor, or his successor in interest therein, should be entitled. That the mortgagee should receive the primary benefit, and the insurers the opportunity for ultimate reimbursement, through such security as the mortgage note and mortgage may afford, accords with the general legal and equitable rights of the parties. The insurers, through their subrogation, virtually occupy the position of a purchaser from the mortgagee for value. The payment, by them, does not operate to reduce or extinguish the mortgage debt or discharge the mortgage, but to satisfy, pro tanto, the mortgagee's claim and assign it to the insurers, leaving it in full force as against the mortgagor and those claiming under him, with no right, on their part, to claim a reduction of the debt by the payment to the mortgagee.

To hold that, under such circumstances, the insurance must be credited upon the mortgage debt would enable the mortgagor to get, indirectly, the benefit of insurance, the right to enforce which, directly and affirmatively, had been lost by breach of conditions of the policy.... Furthermore, since the insurers are undoubtedly entitled to reimbursement by the plaintiff mortgagee out of the proceeds of collection of the mortgage debt, any credit allowed Schancupp would be, in case of resort to him as mortgagor, at the expense of the innocent mortgagee, notwithstanding that the mortgage clause in question is intended and adapted to afford protection to the mortgagee exclusively, as between the parties to the mortgage, such protection not to be defeated by forfeiture, by another such

party, of rights to the benefit of the insurance.

(Citations omitted.)

The Court believes the Iowa Supreme Court would adopt the reasoning of the foregoing authorities if a similar question were presented to it. It would not be good public policy for the law to allow a mortgagor-insured to benefit from his own arson or fraud by requiring his insurer to pay the mortgagee and reduce the amount of his obligation. The rule announced in the cited cases permits the insurer to recover any money it may have paid the mortgagee back from the culpable insured. Such a rule discourages, rather than encourages, arson or fraud.

It clearly follows from the principles set forth in the cited cases that plaintiff is not entitled to benefit from the protections afforded the bank under the mortgagee clause if the policy has been forfeited as to plaintiff. If the affirmative defenses are not proven, plaintiff can recover the balance due to it under Count I. If one or more of those defenses is proven, plaintiff is not entitled to recover without regard to such defenses, as it seeks to do in Count III.

IT IS THEREFORE ORDERED that defendant's motion for partial summary judgment on Count I of plaintiff's complaint is hereby denied without prejudice to the reassertion of the same issues by motion during or after the trial of this action.

IT IS FURTHER ORDERED that defendant's motion for summary judgment on Count III of plaintiff's complaint is hereby granted.