**FARMERS & MERCHANTS SAVINGS BANK, Appellee,**

v.

**FARM BUREAU MUTUAL INSURANCE CO., Appellant.**

No. 86–459.

Supreme Court of Iowa.

May 13, 1987.

James A. Pugh of Morain, Burlingame, Pugh & Juhl, West Des Moines, for appellant.

Larry E. Ivers, Eagle Grove, for appellee.

Considered by McGIVERIN, P.J., and LARSON, CARTER, WOLLE, and LAVORATO, JJ.

LAVORATO, Justice.

In this single issue appeal we must decide whether an assignee of a contract vendor named as loss payee under a standard mortgage loss payable clause in an insurance policy procured by the contract vendee is entitled to insurance proceeds where the real estate contract has been forfeited subsequent to a fire loss. The defendant Farm Bureau Mutual Insurance Company (Farm Bureau) appeals from a district court declaratory judgment that obligated Farm Bureau, who insured the premises, to pay the insurance proceeds to the plaintiff Farmers and Merchants Savings Bank (bank), assignee of the contract vendor. We reverse and remand.

In February 1979 George R. Shearer and Elizabeth F. Shearer (Shearers) sold their farm on contract to James A. Elgin and David E. Sands (Elgin and Sands). The

contract contained the following insurance provision that, in part, provided:

> Buyers as and from said date of possession, shall constantly keep in force, insurance, premiums therefor to be prepaid by buyers ... against loss by fire ... on all buildings and improvements, now or hereafter placed on said premises ... in an amount not less than the full insurable value of such improvements ... or not less than the unpaid purchase price herein whichever amount is smaller with such insurance payable to sellers and buyers as their interests may appear....

E & S Farms and James A. Elgin procured the required insurance from Farm Bureau. The policy contained a mortgage loss payable clause that named only George Shearer as payee.

In December 1981 a fire destroyed a building on the farm. The building was insured under the policy for $75,000 which was at least its value at the time of the fire. Farm Bureau denied the claim of the named insured, E & S Farms and James A. Elgin, whose hog confinement operation on the farm was also destroyed in the fire. Because of the nature of the loss payable clause in the policy naming George Shearer as payee, Farm Bureau was obligated to pay his claim regardless of its defenses against E & S Farms and Elgin. Consequently, Farm Bureau did not at this time deny Shearer's individual claim for the $75,000 building loss.

During Farm Bureau's investigation of the claim of E & S Farms and Elgin, Shearer notified a representative of Farm Bureau that he was contemplating a forfeiture of the real estate contract with Elgin and Sands who had missed their yearly payment due in March. The representative warned Shearer and later his attorney that the forfeiture might seriously affect Shearer's insurance claim with Farm Bureau. Ignoring the warning, Shearer proceeded to serve notice of forfeiture on Elgin and Sands on March 2, 1982. *See* Iowa Code §§ 656.2–.3 (1981). Shearer completed the forfeiture by filing the notice of forfeiture and affidavit in support of the forfeiture

with the county recorder on April 12, 1982. *See* Iowa Code § 656.5. At the time of the forfeiture, Elgin and Sands owed the Shearers on the contract the sum of $426,-146 which included principal and interest, taxes, and miscellaneous items.

On April 7, 1982, the Shearers sold the farm on contract to the bank for $426,146. The purchase price was the balance owed by Elgin and Sands. A provision in the contract provided that the insurance proceeds to be received from Farm Bureau were to be used to replace the building destroyed in the fire or to be applied on the principal of the contract. On June 11 Shearer assigned his interest in the claim for the $75,000 loss against Farm Bureau to the bank. Elizabeth Shearer joined in the assignment.

Subsequently, Farm Bureau refused to pay the $75,000 claim to the bank, asserting that Shearer's post-fire forfeiture destroyed his insurable interest and Farm Bureau's subrogation rights. Thereafter, the bank brought a declaratory judgment action against Farm Bureau seeking a determination that Farm Bureau owed it $75,-000 representing the insured value of the building lost in the fire.

Before trial, the district court overruled Farm Bureau's motion for summary judgment based on its claim that the post-fire forfeiture destroyed Shearer's insurable interest and Farm Bureau's subrogation rights. The court ruled that a fact issue existed with respect to the value of the property received by the Shearers following the forfeiture action. Following trial, the district court entered judgment for $75,000 against Farm Bureau in favor of the bank based on the court's interpretation of the loss payable clause of the policy. On appeal Farm Bureau contends the district court erred in concluding that the bank could recover the $75,000 insurance proceeds under the loss payable clause after the contract debt owed by Elgin and Sands had been fully satisfied by the forfeiture proceedings.

Farm Bureau contends that when Shearer forfeited the contract with Elgin and Sands subsequent to the fire, he took the

property back in satisfaction of the contract debt. Because the debt was the basis of Shearer's insurable interest under the policy, the interest was destroyed, thereby terminating Farm Bureau's obligation to pay Shearer or his assignee, the bank.

The bank asserts, and the district court held, that the language in the loss payable clause of the policy authorized Shearer to forfeit the contract without affecting his insurable interest. The language referred to provides in part:

> [T]his insurance as to the interest of the mortgagee ... shall not be invalidated by ... any foreclosure or other proceedings ... nor by any change in the title or ownership of the property....

The bank argues the words "other proceedings" includes forfeiture of a real estate contract.

Two types of mortgage loss payable clauses are available in insurance policies. One is known as an "open" or "simple" loss payable clause that provides the loss shall be payable to the mortgagee as his interest may appear. The open loss payable clause does not create a new contract with the mortgagee nor does it nullify any condition of the policy. The clause simply regards the mortgagee as an appointee of the mortgagor to receive the insurance proceeds. In the event of a loss the mortgagee's rights rise no higher than those of the insured. *See Wholesale Sports Warehouse Co. v. Pekin Ins. Co.*, 587 F.Supp. 916, 919–20 (S.D.Iowa 1984); 5A J. Appleman, *Insurance Law and Practice* § 3401, at 282–84 (1970). Additionally, the mortgagee's recovery is subject to affirmative defenses based on the acts or omissions of the mortgagor. *Wholesale Sports Warehouse Co.*, 587 F.Supp. at 920; 5A J. Appleman, § 3401, at 282.

The other loss payable clause is known as the New York, standard, or union form. It also provides that the loss shall be payable to the mortgagee as his interest may

appear but goes on to say that "this insurance, as to the interest of the mortgagee only, shall not be invalidated by any act or neglect of the mortgagor or the owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property." 5A J. Appleman, § 3401, at 282.

In contrast to the open loss payable clause, the standard clause does create a new agreement between the mortgagee and the insurer, and the mortgagee is not subject to any defenses against the mortgagor. *Wholesale Sports Warehouse Co.*, 587 F. Supp. at 920; 5A J. Appleman, § 3401, at 286–90. Moreover, the insurer is subrogated to the rights of the mortgagee. *Wholesale Sports Warehouse Co.*, 587 F.Supp. at 920.

The words "as his interest may appear" in both clauses

> mean that the insurer will pay the mortgagee to the extent of his lien at the time of loss. The terms refer, therefore, not to an interest in the property insured, but to the payment of the loss; and not the morgagee's interest in the property, but the interest which he has in the indebtedness.

5A J. Appleman, § 3401, at 285–86.

■ The policy in question contains a New York standard mortgage loss payable clause.[1] Although the clause refers only to a mortgagee, we have said that where a contract vendor is listed as a loss payee, the vendor is considered the same as a mortgagee. *Kintzel v. Wheatland Mut. Ins. Ass'n*, 203 N.W.2d 799, 803 (Iowa 1973) ("The designation of Proesch as owner and Kintzel as contract purchaser created the same relationship as if Proesch had been called mortgagee.").

■ According to what is commonly referred to as the New York rule, the rights of a mortgagee under a standard mortgage

---

1. The clause states in part:
   Loss, if any, ... shall be payable to the mortgagee ... named on ... this policy, as interest may appear ... and this insurance as to the interest of the mortgagee ... shall not be invalidated by any act or neglect of the mortgagor ... nor by any foreclosure or other proceedings or notice of sale relating to the property....

loss payable clause are fixed at the time of the loss, and the mortgagee is entitled to insurance proceeds as long as he has an insurable interest at that time. *Kintzel,* 203 N.W.2d at 808, 810. We have followed the majority of jurisdictions in adopting this rule. *Id.* at 808. Farm Bureau concedes that on the date of the fire, Shearer had an insurable interest measured by the unpaid purchase price under the real estate contract. What is in issue is whether foreclosure of a mortgage or forfeiture of a real estate contract, following a covered loss, extinguishes this insurable interest and thus the mortgagee's or vendor's right to the insurance proceeds. At first blush, it would seem the answer would be "no" under the New York rule because the rights of the mortgagee are fixed at the time of the loss.

Farm Bureau, however, asserts that a number of jurisdictions have adopted an exception to the New York rule, at least, in the case of a mortgagor-mortgagee. The exception provides that when a loss occurs, subsequent partial or full extinguishment of the debt giving rise to the insurable interest will reduce the mortgagee's interest in the proceeds to the extent the debt has been satisfied. *Calvert Fire Ins. Co. v. Environs Dev. Corp.,* 601 F.2d 851, 856 (5th Cir.1979); *Mann v. Glens Falls Ins. Co.,* 541 F.2d 819, 823 (9th Cir.1976); *Insurance Co. of N. Am. v. Citizens Ins. Co.,* 425 F.2d 1180, 1182 (7th Cir.1970); *Rosenbaum v. Funcannon,* 308 F.2d 680, 684 (9th Cir.1962); *Nationwide Mut. Fire Ins. Co. v. Wilborn,* 291 Ala. 193, 198, 279 So.2d 460, 463 (1973); *Aetna Ins. Co. v. Baldwin County Bldg. & Loan Ass'n,* 231 Ala. 102, 103–04, 163 So. 604, 605 (1935); *Imperial Mortgage Corp. v. Travelers Indem. Co.,* 43 Colo.App. 74, 76, 599 P.2d 276, 277–78 (1979); *Burritt Mut. Sav. Bank v. Transamerica Ins. Co.,* 180 Conn. 71, 79–80, 428 A.2d 333, 338 (1980); *South Carolina Ins. Co. v. Pensacola Home & Sav. Ass'n,* 393 So.2d 1124, 1125 (Fla.Dist.Ct.App.1980); *Sea Isle Operating Corp. v. Hochberg,* 198 So.2d 336, 337 (Fla.Dist.Ct.App.1967); *Partel, Inc. v. Harris Trust & Sav. Bank,* 106 Ill.App.3d 962, 965–66, 63 Ill.Dec. 303, 305–06, 437 N.E.2d 1225, 1227–28 (1982);

*Smith v. General Mortgage Corp.,* 402 Mich. 125, 128–30, 261 N.W.2d 710, 712 (1978); *Power Bldg. & Loan Ass'n v. Ajax Fire Ins. Co.,* 110 N.J.L. 256, 258, 164 A. 410, 411 (1933); *Whitestone Sav. & Loan Ass'n v. Allstate Ins. Co.,* 28 N.Y.2d 332, 335–36, 321 N.Y.S.2d 862, 864–65, 270 N.E.2d 694, 696–97 (1971).

We dealt with the issue of the destruction of an insurable interest in a foreclosure context in *Farmers Sav. Bank, Joice v. Gerhart,* where we said:

> The great weight of authority follows the rule that denies a mortgagee the right to insurance proceeds from losses predating the foreclosure sale when the mortgagee bids the outstanding amount of the judgment.

372 N.W.2d 238, 243 (Iowa 1985). We cited the following language from *Whitestone* as the "basic reason for this rule":

> Because a mortgagee is entitled to one satisfaction of his debt and no more, the bidding in of the debt to purchase the mortgaged property, thus cutting off other lower bidders, has always constituted a satisfaction of the debt.... The point is that the mortgagee has voluntarily converted the debt into the property and has done so by taking the property in satisfaction of the debt. It could have bid less, thus leaving a deficiency for which the mortgagor would be obligated and from which there would survive an insurable interest. It could have bid more, in which event there would have been a surplus in favor of the mortgagor or subsequent lienors but no insurable interest surviving in the mortgagee as mortgagee.

28 N.Y. 2d at 335, 321 N.Y.S.2d at 864, 270 N.E.2d at 696. Recently, we had occasion to use the same reasoning in the context of a post-loss forfeiture of a real estate contract. *See Risken v. Clayman,* 398 N.W.2d 833 (Iowa 1987).

In *Risken,* the question before the court was who, as between a contract vendor and an assignee of the vendee, was entitled to the insurance proceeds from a fire that preceded forfeiture of the real estate contract. As in this case, the contract had a provision stating insurance will be "pay-

able to the sellers and buyers as their interests may appear." Relying on *Gerhart*, we said that a "vendor's interest in insurance proceeds is measured by the unpaid balance of the installment contract." *Risken*, 398 N.W.2d at 837. In resolving the question in favor of the assignee of the vendee we said:

> Under the facts presented here, the [vendor] attempted to pursue two remedies: forfeiture and specific performance of the contract delinquencies by collection of the insurance proceeds.... By forfeiting the contract, the [vendor] reclaimed the $40,000 piece of property in satisfaction of the $32,000 debt, *thereby extinguishing [the vendee's] liability on the contract price. Further, the insurance proceeds were no longer necessary as security on the debt, because, even in its damaged condition, the property value exceeded the unpaid purchase price.*

(Citations omitted.) (Emphasis added.) (citations omitted). We went on to approve the manner in which the court of appeals [2] analogized the forfeiture proceedings with the foreclosure proceedings in *Gerhart*, and then cited the rule that denies a mortgagee the right to insurance proceeds from losses predating the foreclosure sale when the mortgagee bids the outstanding amount of the judgment. We noted that implicit in the court of appeals holding is the concept that forfeiture is like bidding in the judgment at a foreclosure sale. We concluded by approving the following language of the court of appeal's opinion:

> When the [vendors] *elected* to forfeit the real estate contract they voluntarily converted the debt into property and in doing so took the property in satisfaction of the debt. [The vendors'] lien on the insurance proceeds is determined by the unpaid purchase price and [the assignee's] liability for the unpaid purchase price having been extinguished by the forfeiture, [the assignee] is entitled to the insurance proceeds.

398 N.W.2d at 839.

■ Applying the same reasoning to the facts in this case, we hold that the district court erred in concluding the bank was entitled to the insurance proceeds. When Shearer forfeited the contract, he took back the property in satisfaction of the outstanding contract debt. The result was the same as in the foreclosure of a mortgage where the full amount of the debt is bid in: the debt was extinguished. Because a vendor's interest in insurance proceeds is measured by the unpaid purchase price, Shearer's insurable interest was destroyed by the satisfaction of the contract debt. By destroying his insurable interest, Shearer lost all rights under the policy.

However, regardless of this result, the Shearers have been made whole because they sold the property to the bank for the amount of the extinguished debt, $426,146. Their right to collect the full purchase price is not contingent upon a provision in the contract that the insurance proceeds would be used to replace the building or be applied to the principal of the contract. Of course the bank receives nothing because it acquired nothing under the assignment of June 11; however, this result occurs because of the bank's own action in contracting with the Shearers subsequent to the forfeiture and taking the assignment to prosecute this action. As assignee of the Shearers, the bank acquires no greater rights in the insurance proceeds than the Shearers have. *Steltzer v. Chicago, M. & St. P. Ry.*, 156 Iowa 1, 4, 134 N.W. 573, 574 (1912). The bank stands in the shoes of the Shearers, who have not been damaged by the sale.

■ Finally, we find no merit in the bank's contention that the language "this insurance as to the interest of the mortgagee ... shall not be invalidated ... by any foreclosure or other proceedings" authorized the forfeiture without affecting Shearer's insurable interest. A similar contention was answered in *Aetna Ins. Co. v. Baldwin County Bldg. & Loan Ass'n*:

> The provision in the mortgage clause by which the policy shall not be invalidated as to the [mortgagee] by the fore-

---

**2.** The case was before us on further review.

closure does not refer to a forfeiture of his right after the loss occurred, but to the status existing at the time of the loss. The stipulation is that the insurance shall not be invalidated by such foreclosure; not that thereby the mortgagee may not lose his right to collect the loss by a foreclosure thereafter occurring, and occasioned by his status thus created, upon a consideration of established principles.

231 Ala. at 103, 163 So. at 605; *see also Imperial Mortgage Corp. v. Travelers Indem. Co.*, 43 Colo.App. 74, 76, 599 P.2d 276, 278 (1979). The insurance is not invalidated by a post-fire foreclosure or forfeiture. What occurs is that the mortgagee's or vendor's right to the insurance proceeds is extinguished to the extent that the underlying debt is satisfied by proceedings subsequent to the loss. Cases previously cited clearly demonstrate that a mortgagee and a contract vendor can change or destroy their rights subsequent to a loss. *See Whitestone Sav. & Loan Ass'n v. Allstate Ins. Co.*, 28 N.Y.2d at 334, 321 N.Y.S.2d at 863, 270 N.E.2d at 695 ("What seems to have caused confusion is the equally well-settled rule that the rights under a fire insurance policy are fixed both as to amount and standing to recover at the time of the fire loss. From this rule it has been further and improperly deduced that the mortgagee could do nothing to impair his rights thus fixed at the time of loss. And of course he could: by waiver, estoppel, assignment, or as here by discharge of the debt."); *see also* 5A J. Appleman, *Insurance Law and Practice* § 3403, at 299–300 (1970) ("A provision in a mortgage clause that a policy should not be invalidated as to the mortgagee by the foreclosure has been held to refer to the status existing at the time of loss and not to a forfeiture of his right after the loss occurred.").

We reverse the judgment of the district court and remand with directions for entry of a declaratory judgment in favor of Farm Bureau.

REVERSED AND REMANDED.