155 So.2d 923

**FIREMAN'S FUND INSURANCE COMPANY**

v.

**Anne Marie Hayduck THOMAS, as Ex'x.**

**5 Div. 743.**

Supreme Court of Alabama.
July 25, 1963.

Rehearing Denied Sept. 5, 1963.

Ball & Ball and John R. Matthews, Jr., Montgomery, for appellant.

Jas. Noel Baker and Brown & McMillan, Opelika, for appellee.

GOODWYN, Justice.

W. H. Thomas, Jr., brought suit against appellant, Fireman's Fund Insurance Company, to recover the value of a destroyed 1953 Cessna airplane which had been insured by appellant. The airplane was owned jointly by plaintiff and Clifford Otto Sasser and the insurance policy was issued to them as the owners. There was a loss payable endorsement to Jack B. Tatum who sold the airplane to Thomas and Sasser for $5,750. Of this, Thomas and Sasser each paid $1500, leaving a balance due of $2,750 which was covered by the mortgage to Tatum. Sasser was killed while piloting the plane.

Thomas brought suit on the policy to recover the full value of the plane, alleged in the complaint to be $4500. There has been no administration on the estate of Sasser. Tatum did not join in the suit as plaintiff; nor has he been joined as a plaintiff pursuant to Code 1940, Tit. 7, § 135, which provides for joining a necessary party as plaintiff who, upon request, does not consent to join in the suit.

Plaintiff's demand for a jury trial was withdrawn and the case was submitted for decision on a stipulation of the parties. Judgment was rendered in favor of plaintiff for $4,175. The insurance company brings this appeal from that judgment.

The stipulation contains the following facts pertinent on this appeal, viz.:

"1. On or about May 11, 1959, plaintiff and Clifford Otto Sasser jointly purchased from Jack B. Tatum a 1953 Cessna, 170–B Aircraft, each becoming an owner of an undivided one-half interest therein. Of the total purchase price of $5,750.00, plaintiff and Sasser each paid $1,500.00, and the remaining balance of $2,750.00 was financed by a note and mortgage to Tatum.

"2. On May 11, 1959, plaintiff and Sasser obtained from the defendant an 'Aircraft Hull' policy, naming themselves as insureds, with a loss payable endorsement to Jack B. Tatum. A copy of said policy and endorsement are attached hereto as Exhibit 'A' and made a part hereof. Said policy was issued and approved

by. Associated Aviation Underwriters as agent for the defendant.

"3. There was no business connection between plaintiff and Sasser. They were casual friends who were mutually interested in flying, and they purchased the aircraft jointly for the purpose of sharing in the costs and upkeep of the aircraft. There was no mutual business purpose to be served by the aircraft.

"4. At approximately 12:30 a.m., on August 13, 1959, Sasser, in the company of one Walter William Mitchell, took said airplane from its hanger at the Auburn-Opelika Airport, and began flying it over and around the towns of Auburn and Opelika, diving on or 'buzzing' buildings and homes and flying at 'treetop' level. In some instances the airplane was flown at such low altitude that it nearly struck buildings in the towns of Auburn and Opelika.

"After operating in such fashion for approximately one and one-half hours, the aircraft crashed into trees in the vicinity of Opelika, Alabama, killing Sasser and Mitchell, and totally destroyed said aircraft.

"5. Mitchell, who was a passenger in the aircraft, had no connection with plaintiff. He had no pilot's or student pilot's certificate and did not know how to pilot or operate an aircraft. On the night of the accident Sasser and Mitchell had attended a meeting at a club near Opelika where they had several alcoholic drinks, and upon leaving said club at approximately midnight, Mitchell had purchased a half pint of Early Times Whiskey, which he carried with him. An empty one-half pint bottle of Early Times Whiskey was found in the wrecked aircraft. Sasser was intoxicated at the time the aircraft was wrecked.

"6. At the time of the accident, Sasser held a pilot's certificate issued by the Administrator of the Federal Aviation Agency with a Class 3 medical rating. Attached hereto as Exhibit 'B' and made a part hereof is a photostatic copy of said certificate. The aircraft piloted by Sasser at the time of the accident was not an Aeronca 7–AC type aircraft endorsed on his pilot's certificate for solo flight. However, E. Casey Jones, an instructor at Auburn School of Aviation, had checked Sasser out in a Cessna 170–B on the 23rd day of May, 1959, but had failed to endorse the name upon Sasser's certificate for solo flight in a Cessna 170–B. Sasser had no previous night flight experience.

"7. Plaintiff had no knowledge that Sasser was operating the aircraft immediately prior to said accident, and, consequently, did not know of any violation of Civil Air Regulations.

"8. The value of the aircraft at the time it was destroyed was $5,750.00. There was no salvage received for aircraft. There has been no administration of the estate of Sasser. Plaintiff and Sasser's estate are jointly and severally liable to Jack B. Tatum for $2,750.00, with interest at six per cent (6%) from May 12, 1959, on the note and mortgage executed in connection with the purchase of the said aircraft. * * *"

The decisive question on this appeal concerns the propriety of Thomas bringing the suit in his name alone. Appellant contends that the only proper party-plaintiff was the mortgagee Tatum because the mortgage indebtedness exceeded any amount which appellee might recover under the policy for his half interest in the airplane.

The record does not disclose how the trial court arrived at the figure $4,175 as damages. In appellant's brief it is stated, and not controverted by appellee, that the trial court made statements in discussing the

case showing that the judgment was computed as follows:

| | |
|---|---|
| Stipulated value | $5750 |
| Less deductible provided by policy | 150 |
| Value insured | 5600 |
| Less mortgage to Tatum | 2750 |
| Equity insured | 2850 |
| Appellee's half interest in equity | 1425 |
| Plus mortgage to Tatum | 2750 |
| Judgment for | $4175. |

There is no question that the judgment exceeds the value of appellee's interest. In fact, it approximates 74% of the total value of the insured airplane, while appellee owned only a half interest.

Appellant makes this observation in its brief:

"Perhaps the trial court felt that Sasser's estate was insolvent and could not contribute to the payment of the mortgage indebtedness and, therefore, as a practical matter, the loss of the aircraft caused appellee to sustain a financial loss of the full mortgage indebtedness plus one-half of the equity." In appellee's brief it is stated:

"Sasser's administrator or executor could not recover in any event, because of Sasser's violation of the contract. Tatum's right to proceed has now merged with that of the plaintiff, who is the sole party plaintiff in name and interest. To permit the judgment to stand as it is will be to enforce only what the insurer promised to do when the policy was issued, to protect the innocent insured and the mortgagee."

By way of further answer to appellant's insistence that the mortgagee was a necessary party, appellee has filed in this court an affidavit made by Tatum to the effect that he has transferred the note and mortgage to appellee. There is no question that this transfer was made after the case was tried. Appellant has moved to strike this affidavit because it "avers matters which were not presented to the trial court but which arose after the taking of an appeal in this cause"; that it "includes matters which do not appear in the transcript filed in these proceedings," and that "consideration of the matters averred in said affidavit by this Court on appeal would be illegal."

We are at the conclusion that the trial court erred in rendering the judgment in favor of appellee.

It appears that the amount of appellee's claim under the insurance policy at the time suit was brought was $2,880.71, and on the date of the judgment was $2,990.66, arrived at as follows:

| | |
|---|---|
| Value of insured aircraft | $5,750 |
| Less deductible provided by policy | 150 |
| Total value insured | $5,600 |
| Appellee's one-half interest | $2,800 |
| Interest to date suit filed (Oct. 12, 1959, to Apr. 8, 1960) | 80.71 |
| Interest to date of judgment (Oct. 12, 1959, to Dec. 8, 1960) | 190.66 |
| Appellee's claim on date suit filed | $2,880.71 |
| Appellee's claim on date of judgment | $2,990.66 |

The amount owed Tatum on the mortgage at the time suit was brought was $2,899.46, and on the date of the judgment was $3,009.46, arrived at as follows:

| | |
|---|---|
| Principal amount of mortgage indebtedness | $2,750 |
| Interest at 6% from May 12, 1959, to date suit filed (April 8, 1960) | 149.46 |
| Mortgage debt when suit filed | $2,899.46 |
| Principal amount of mortgage indebtedness | $2,750 |
| Interest at 6% from May 12, 1959, to date of judgment (December 8, 1960) | 259.46 |
| Mortgage debt when judgment rendered | $3,009.46 |

It can be seen, therefore, that the mortgage indebtedness held by Tatum and covered by a loss payable clause contained in the insurance policy, exceeded appellee's claim both when the suit was brought and when the judgment was rendered. (In this connection, it is to be noted that since appellee and Sasser's estate are jointly and severally liable for the mortgage indebted-

ness, appellee can be held for the entire amount.) The result is that Tatum, "being the exclusive beneficial owner of the whole money due by defendant, is the only person entitled to recover. After the loss became fixed, 'the policy was nothing other than a contract for the payment of money.'" Code 1940, Tit. 7, § 126; Capital City Insurance Co. v. Jones, 128 Ala. 361, 364, 30 So. 674, 86 Am.St.Rep. 152; Life & Casualty Ins. Co. of Tennessee v. Crow, 231 Ala. 144, 146, 164 So. 83. In other words, an action at law on such policy must be brought in the name of the beneficial owner, that is, the person entitled to receive the money in his own right. See: Hanover Fire Ins. Co. v. Street, 234 Ala. 537, 543(8), 176 So. 350; Life & Casualty Ins. Co. of Tennessee v. Crow, supra; Home Ins. Co. of New York v. Scharnagel, 227 Ala. 60, 64(9), 148 So. 596; Union Ins. Soc. of Canton v. Sudduth, 212 Ala. 649, 651, 103 So. 845; Capital City Insurance Co. v. Jones, supra; Milwaukee Mechanics Ins. Co. v. Maples, 37 Ala.App. 74, 85(5), 66 So.2d 159, cert. den. 259 Ala. 189, 66 So.2d 173.

 From the foregoing authorities, it is apparent that the action should have been brought by the mortgagee, thereby necessitating a reversal of the judgment in favor of appellee.

Appellee takes the position that, in bringing the suit, he was acting as trustee for the benefit of Tatum, the mortgagee, and, in view of § 134, Tit. 7, Code 1940, Tatum was not required to be a party. Section 134 provides, in pertinent part, as follows:

"An executor, administrator, a trustee of an express trust, or a person expressly authorized by statute, may sue, without joining with him the person for whose benefit the action is prosecuted. A trustee of an express trust, within the meaning of this section shall be construed to include a person with whom, or in whose name, a contract is made for the benefit of another. * * *"

That section is not applicable to the present case. Here, there is no express trust;

and we know of no statute which would make it unnecessary for Tatum to be a party.

Appellant's motion to strike appellee's affidavit, showing transfer to appellee by Tatum of the note and mortgage, is well taken. On consideration of the appeal, we are confined to the record of the proceedings in the trial court and cannot consider matter dehors the record. Evans v. Avery, 272 Ala. 230, 231–232, 130 So.2d 373; Robinson v. Morrison, 272 Ala. 552, 561, 133 So.2d 230; Lindsey v. Barton, 260 Ala. 419, 425, 70 So.2d 633.

The appellee died after the case was submitted here. His executrix has moved for revival of the cause in her name and the motion has been granted.

Motion to strike appellee's affidavit is granted.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and COLEMAN, JJ., concur.