Wheeler G. FOSHEE, Jr., et al., etc.,
Plaintiffs-Appellees,

United States Steel Corp., a corporation,
and Ring Around Products, Inc.,
Plaintiffs-Intervenors,

v.

LLOYDS, NEW YORK et al.,
Defendants-Appellants.

BANK OF BREWTON, a Banking
Corporation, Plaintiff,

Ring Around Products, Inc., et al.,
Plaintiff-Intervenors,

v.

NYTCO SERVICES, INC., a corporation,
Defendant and Third-Party
Plaintiff-Appellant,

v.

Wheeler G. FOSHEE, Jr., and E. Crum
Foshee et al., Third-Party
Defendants-Appellees.

No. 78–1557.

United States Court of Appeals,
Fifth Circuit.

June 25, 1980.

Robert S. Lamar, Jr., John R. Matthews, Jr., Montgomery, Ala., for defendants-appellants.

C. William Gladden, Jr., Birmingham, Ala., for Lloyds, New York, and Lloyds, London.

Hobbs, Copeland, Franco & Screws, Albert W. Copeland, Montgomery, Ala., Tipler & Fuller, Frank J. Tipler, Jr., W. Sidney Fuller, Andalusia, Ala., for Wheeler G. Foshee, Jr. & E. Crum Foshee.

Before VANCE, POLITZ and RANDALL, Circuit Judges.

VANCE, Circuit Judge:

This appeal arises from two separate but related actions that the district court consolidated for trial. The gist of this appeal, governed by the laws of Alabama, concerns the propriety of the district court's actions in establishing a common fund from peanut insurance proceeds, awarding attorneys fees and expenses from that fund, setting the value of those fees, assigning priority to the attorneys' claims against the fund, and allowing the insurance company to share in that fund. We affirm.

## I.

On April 23, 1975, a fire at Red Level, Alabama destroyed two peanut warehouses, their contents (bagged, shelled peanuts) and an office building. Wheeler G. Foshee, Jr., and E. Crum Foshee, partners doing business as Foshee Milling Company, owned the realty and the peanuts. NYTCO Services, Inc. (NYTCO) provided field warehouse services and issued warehouse receipts covering the nuts. Lloyds of New York and Lloyds of London (Lloyds) insured the nuts. Bank of Brewton held three promissory notes issued by the Foshees, which were secured by warehouse receipts for the nuts.[1] First Southern Federal Savings & Loan Association of Mobile, Alabama (First Southern), held a mortgage from the Foshees on their company's real estate.[2]

In full force and effect when the fire occurred, the Lloyds insurance policy covered the following interests: (1) Foshee Milling Company as named insured with respect to peanuts and buildings; (2) First Southern as loss-payee on the buildings involved in the fire; (3) Bank of Brewton as loss-payee-mortgagee on the peanuts involved in the fire; and (4) NYTCO, the lessee-warehouseman, as its interest might appear. The Foshees procured and paid for the insurance policies as owners of the Foshee Milling Company.

The Foshees filed appropriate notice and proof of their losses with Lloyds. In addition to the realty loss, they claimed that the fire destroyed 19,926 125-pound bags of shelled peanuts worth 28 cents per pound. After Lloyds completed its investigation, all interested parties conferred. Lloyds contended that the Foshees, Bank of Brewton and First Southern had overstated their losses. Lloyds' settlement offers for the peanuts and the buildings were rejected.

In October 1975, the Foshees, Bank of Brewton and First Southern brought suit against Lloyds to recover their insurance monies. The law firm of Tipler & Fuller originally represented all plaintiffs. The attorneys agreed to a fee arrangement under which they would receive fifty percent of any recovery on the building loss above the amount of the mortgage debt owed to First Southern (it would not pay any part

---

1. Bank of Brewton had made a series of loans totaling $534,122.24 to the Foshees. The Foshees have not repaid these loans.

2. An outstanding first mortgage in favor of First Southern covered the real estate on which the warehouses were located. On April 23, the mortgage had a principal balance of $351,409.56 and a daily rate of interest of $92.73.

of the fee),[3] and the same percentage of any recovery on the peanut loss above the amount of the mortgage debt owed to Bank of Brewton (it would not pay any part of the fee). Tipler & Fuller later associated with the firm of Hobbs, Copeland, Franco & Screws to pursue the plaintiffs' suit.

Before trial, Lloyds raised the possibility of an arson defense or a fraud defense. Mr. Tipler notified Bank of Brewton about the possible conflict of interest and withdrew as its counsel. Bank of Brewton associated new counsel. Lloyds did not raise these defenses at trial, although it continually asserted that at the time of the fire the warehouses contained only a nominal amount of peanuts.

Bank of Brewton, while remaining in the litigation, filed a separate suit against NYTCO on the warehouse receipts. NYTCO, in turn, filed a third party action against the Foshees and Lloyds.[4] This action and the original suit were consolidated for trial.

On October 7, 1976, Lloyds and NYTCO entered into an agreement with Bank of Brewton prior to trial and in recognition of Bank of Brewton's position as loss-payee-mortgagee under Lloyds' policy and as holder of NYTCO warehouse receipts. They guaranteed Bank of Brewton $500,000 for its promise to withdraw from active participation in the suit, and Bank of Brewton agreed to assign all of its rights in the Foshee notes to Lloyds and NYTCO jointly, as their interests might appear. Lloyds and NYTCO agreed to allocate the $500,000 payment between themselves on the basis of the number of peanut bags actually destroyed in the fire. This number was to be determined by the jury. Bank of Brewton ceased active participation in the suit, although it remained a nominal party.

At trial, the jury found that the fire destroyed 17,000 125-pound bags of peanuts worth 24 cents per pound. The court subsequently entered judgment for Bank of Brewton to receive $500,000 plus interest, totalling $512,410.69. Pursuant to the stipulation, Lloyds paid $437,188.80 and NYTCO paid $75,221.89.[5] The court gave judgment for NYTCO against Foshee Milling Company for $75,221.89 under the third-party indemnity action.

The court subsequently ordered Lloyds to pay $119,686.16 into the registry fund as the difference between the value of the peanuts ($510,000 for 17,000 bags at $.24), with interest ($47,874.96), and the amount paid by Lloyds to Bank of Brewton ($437,-188.80). The court also found that Lloyds and NYTCO, assignees of the Foshees' notes to Bank of Brewton, were holders in due course of Bank of Brewton's perfected security interest and, accordingly, were entitled to Bank of Brewton's share of the remaining insurance proceeds.

At the hearing held to determine the rights to the $119,686.16 fund, Foshees' attorneys claimed a portion of the fund as attorneys fees; Foshees' creditors, as intervenors, claimed the fund as judgment credi-

---

3. Prior to trial, plaintiffs' attorneys altered their fee arrangement in representing First Southern and the Foshees on the building losses. The new agreement provided for a flat one-third fee as long as First Southern recovered the full amount of mortgage attributable to involved buildings. Thereafter and during the pendency of the case on January 6, 1977, the Foshees and First Southern entered into a settlement of the building loss with Lloyds for $160,000. Lloyds subsequently paid this amount into court for distribution. First Southern received $103,-279.68 of this amount plus interest; the remaining $54,868.24 went to plaintiffs' attorneys pursuant to the original fee contract.

4. NYTCO based its claim against the Foshees on a written indemnity agreement in its favor

executed by the Foshees. NYTCO's third-party claim against Lloyds was made in NYTCO's capacity as a loss-payee under Lloyds' policy.

5. NYTCO issued warehouse receipts on 19,926 bags of peanuts. The jury's finding that the warehouse contained only 17,000 bags of peanuts at the time of the fire represented a finding of a 14.68% discrepancy from the receipts. NYTCO's $75,221.89 payments, therefore, covered 14.68% of the $512,410.69 due to Bank of Brewton. Lloyds' $437,188.80 payment covered the remaining 85.32% of the amount owed to Bank of Brewton, pursuant to the parties' stipulation.

tors;[6] Lloyds claimed that the creation of the fund had been improper, that said monies should be returned, and, alternatively, that along with NYTCO it had a superior right to the fund as Bank of Brewton's assignee. After assessing these claims, the trial court held that the Foshees' attorneys could use Alabama's "common fund" doctrine to take a pro rata share of the cost of creating the fund in lieu of their original fee contract. The court further ruled that this claim was superior to all other claims, and awarded the attorneys $79,779.83. It found Lloyds and NYTCO, as assignees, to be entitled to the remainder of the fund with priority over all other claimants.

## II.

On appeal, Lloyds claims that the district court erred in creating the $119,686.16 fund. Lloyds contends further that, if the fund were properly created, the trial court erroneously denied it the entire fund through subrogation to Bank of Brewton's rights, whereas NYTCO asserts that Lloyds may not share in the fund. Lloyds and NYTCO challenge the amount of the attorneys fees award to the Foshees' lawyers. Lloyds and NYTCO assert, moreover, that the court improperly ruled that the Foshees' attorneys possessed a superior claim on the fund. Bank of Brewton has no interest in this appeal, and First Southern and the settlement of the building loss are not before us.

■ We conclude that the $119,686.16 fund was properly created and distributed. The Foshees bought and paid for insurance coverage on the destroyed peanuts. The jury verdict set Lloyds' liability under the policy at $557,874.96. Lloyds paid Bank of Brewton $437,188.80. This reduced Lloyds' obligation under the insurance contract to $119,686.16. The district court ordered that this amount be paid into the fund. The sum of these payments satisfies Lloyds' liability. Absent the fund's creation, Lloyds would receive a windfall unacceptable under the laws of Alabama.

Lloyds argues, however, that it does not owe anyone the $119,686.16 that the court ordered paid into the fund. This supposedly follows from two arguments: (1) Only Bank of Brewton was entitled to recover under the insurance on the peanut loss, because the mortgage debt due Bank of Brewton ($534,122.24) exceeded the value of the peanuts destroyed in the fire ($510,000 not including interest). (2) Bank of Brewton assigned its rights under the policy and its claims against the Foshees to Lloyds and NYTCO in return for a guaranteed $500,-000. Accordingly, once Lloyds and NYTCO paid Bank of Brewton's claim either Lloyds' debt was extinguished or Lloyds along with NYTCO, as Bank of Brewton's assignees, was entitled to any remaining monies due under the policies. The fallacies of argument (1) and argument (2) are discussed respectively in section A and section B *infra*.

### A. · Creation of the Fund

Lloyds constructs its first argument on this court's ruling in *Levine v. Insurance Co. of North America*, 440 F.2d 679 (5th Cir. 1971): "[A] mortgagor-insured [*i. e.*, the Foshees] can maintain suit against the insurer [*i. e.*, Lloyds] on a policy with a mortgagee loss payable clause *only for the balance after deducting the amount due on the mortgage from the loss recoverable under the insurance policy*." *Id.* at 681 (emphasis added). *See also-Fireman's Fund Insurance Co. v. Thomas*, 275 Ala. 445, 155 So.2d 923, 926 (1963); *Capital City Ins. Co. v. Jones*, 128 Ala. 361, 30 So. 674, 676 (1900).

*Levine* is inapposite for a number of reasons. First, *Levine* and the Alabama cases it relies on did not involve a settlement between mortgagee and insurer for an amount less than the mortgage debt. Second, the settlement between Lloyds and Bank of Brewton did not discharge the Foshees' debt under the promissory notes that it had executed. Third, *Levine* involved an independent agreement between

---

**6.** Issues concerning the right of the intervenors, USS Agri-Chemicals, a division of United States Steel, and Ring Around Products, Inc., who elected not to appeal the district court's decision, are not before us.

the insurance company and the mortgagee for the latter's benefit. 440 F.2d at 680. Fourth, and most important, *Levine* does not adumbrate the relevant policy considerations that govern the rule's application.

▮ In other words *Levine* states a clear rule that has no bearing under the facts of this case. If the mortgagee's actual claim equals or exceeds the insurer's obligation, there is nothing left for the mortgagor to take; the mortgagee's right of recovery limits the mortgagor's right. *See Fireman's Fund Insurance Co. v. Thomas*, 275 Ala. 445, 155 So.2d 923, at 926. If, however, the mortgagee with a loss payable clause settles with the insurer for an amount less than the mortgage debt without extinguishing entirely that debt and claims only that lesser amount from the insurer, the mortgagor recovers the difference between the amount the insurer owed under the policy and the amount the insurer actually paid pursuant to the settlement if the mortgagor purchased the insurance for his own benefit. *See Tarrant Land Co. v. Palmetto Fire Ins. Co.*, 220 Ala. 428, 125 So. 807, 809 (1930). Under Alabama law, if a *mortgagor* satisfies or settles a mortgage debt owed to the mortgagee pending a suit against the insurer, the mortgagor becomes entitled to the full recovery under the policy and no windfall accrues to the insurer. *Aetna Ins. Co. v. Koonce*, 233 Ala. 265, 171 So. 269, 270–71 (1936). The result remains the same if the insurer, without extinguishing the mortgagor's debt, settles the mortgage debt with the mortgagee. The relevant question, in other words, is not *who* is the settlor, but is instead *what is the mortgagee's interest*. Lloyds erroneously assumes that the mortgagee's interest is defined exclusively at the time of loss. In the case of a settlement that does not discharge the mortgagor's debt, however, the mortgagee's interest is defined by the stipulation. Any excess monies are for the benefit of the insured mortgagor. If, therefore,

the mortgagee has modified its claim as a result of a settlement and if the insured's loss exceeds that new claim, the insurer remains liable to the insured mortgagor for the excess monies. 233 Ala. 265, 171 So. 269, at 270.

This result advances the interests of the relevant parties: "The insurer is primarily interested in protection against double liability; the mortgagee in getting what is due him when the loss is paid; the mortgagor in getting the entire loss paid."[7] *Aetna Ins. Co. v. Koonce*, 233 Ala. 265, 171 So. 269, at 271. Lloyds does not charge that it is being subjected to double liability; it contends, however, that it should be allowed to pay less than is due under the policy. Bank of Brewton has received what it agreed to accept instead of its due. The mortgagor's interest, if, as here, he has purchased the policy for his own benefit, is served only if "payment of the insurance money to the mortgagee goes to the benefit of the mortgagor in satisfaction pro tanto of the mortgage debt." *Tarrant Land Co. v. Palmetto Fire Ins. Co.*, 220 Ala. 428, 125 So. 807, at 809. Lloyds' payment to Bank of Brewton still left the Foshees in debt, although to Lloyds and NYTCO, with their collateral substantially diminished. That payment, coupled with Lloyds' payment into the fund, equals Lloyds' obligation under the policy. The fund ensures for the Foshees that the entire insured loss is paid. The district court, in other words, has sought and achieved the result mandated by Alabama law and public policy. The power to create the fund, moreover, derives from the court's "full power . . . to apportion [the insurance monies] between the plaintiffs." *Aetna Ins. Co. v. Koonce*, 233 Ala. 265, 171 So. 269, at 271. Creation of the fund was proper, therefore, because the insured and compensable damage exceeded the stipulated loss of the loss-payee-mortgagee. The stipulation between Bank of

---

7. Because the insurance stands in lieu of the mortgaged property in case of loss,

 [i]t is obviously true that the mortgagor has a direct interest in the entire loss under a policy of this character. *The portion going to*

*the mortgagee is the mortgagor's indemnity against his personal liability for the mortgage debt.*

*Aetna Ins. Co. v. Koonce*, 233 Ala. 265, 171 So. 269, at 270 (emphasis added).

Brewton and Lloyds does not alter this result.

### B. *Lloyds' Claim to the Fund*

 In Alabama, the right of an insurer to subrogation from the mortgagee of its rights against the mortgagor depends on who purchased the insurance or for whose benefit it was purchased in the first instance. *See Pacific National Fire Insurance Co. v. Watts*, 266 Ala. 606, 97 So.2d 797, 800–02 (1957); *Continental Ins. Co. v. Rotholz*, 222 Ala. 574, 133 So. 587, 589 (1931); *Tarrant Land Co. v. Palmetto Fire Ins. Co.*, 220 Ala. 428, 125 So. 807, at 809. The insurer may not enforce a putative subrogation if the mortgagor procured the policy for his own benefit and at his own expense; a contrary result would unjustly enrich the insurer at the expense of the insured. *Pacific National Fire Insurance Co. v. Watts*, 266 Ala. 606, 97 So.2d 797, at 801; *Tarrant Land Co. v. Palmetto Fire Ins. Co.*, 220 Ala. 428, 125 So. 807, at 809. If, however, the insurance was purchased for the mortgagee's benefit alone, the insurer may become a subrogee of the mortgagee's rights against the mortgagor. *ABC Supermarket, Inc. v. American Employers Insurance Co.*, 283 Ala. 13, 214 So.2d 291, 298–99 (1968); *Tarrant Land Co. v. Palmetto Fire Ins. Co.*, 220 Ala. 428, 125 So. 807, at 809. What the laws and public policy of Alabama eschew with respect to subrogation applies with equal force to attempted assignments that have the effect of a subrogation. *See Pacific National Fire Insurance Co. v. Watts*, 266 Ala. 606, 97 So.2d 797, at 801. As the district court noted in its opinion of January 30, 1978,

> Strong equitable reasons support the result. To subrogate the insured to the rights of the mortgagee who has been paid under a loss payee clause would create a windfall for the insurer, allowing him, in effect, to escape liability on the policy. Further, subrogation would deprive the insured of the benefit of his insurance for he would continue to be liable on the mortgage notes even though the mortgagee had been paid off.

For the same reasons [that] it cannot recover as a subrogee, an insurer, in general, should not be able to recover as an assignee or transferee.

A contrary result would unjustly enrich Lloyds. *See Pacific National Fire Insurance Co. v. Watts*, 266 Ala. 606, 97 So.2d 797, at 801. The Foshees bought and paid for the insurance. Lloyds' liability on the peanuts, as determined by the jury, amounts to $557,874.96. Its deal with Bank of Brewton attempted to avoid this obligation. Lloyds, although entitled to credit against its liability in the amount paid to Bank of Brewton and used to discharge part of the mortgage debt, would be unjustly enriched if it is allowed to relieve itself of the balance of the judgment debt in derogation of its contractual obligation. Lloyds, therefore, owed $119,686.16 to the Foshees and their creditors. The district court properly enforced this contractual obligation by ordering Lloyds to pay the amount still due into a fund for those entitled to share in the proceeds. It would have eviscerated Lloyds' obligation by holding Lloyds to be subrogated to Bank of Brewton, and properly denied subrogation under the facts of this case.

### C. *Award of Attorneys' Fees*

 The trial court properly awarded fees and expenses to the Foshees' attorneys in the amount of $79,779.83 rather than in a smaller amount under their initial fee agreement. The efforts of the Foshees' attorneys contributed to the creation of a total fund of approximately $557,000. The availability of these monies benefits the Foshees, their creditors and Lloyds and NYTCO as holders of Bank of Brewton's notes. The trial court correctly determined that Alabama law provides for an award of attorneys fees out of a common fund created by their services for the benefit of several parties. *See Creel v. Birmingham Trust National Bank*, 577 F.2d 352, 353 (5th Cir. 1978); *Troy Bank & Trust Co. v. Brantley*, 263 Ala. 428, 82 So.2d 618, 627 (1955); *Penney v. Pritchard & McCall*, 255 Ala. 13, 49 So.2d 782, 784, 787 (1950). The original fee

contract was rendered ineffective by subsequent material changes. *See* note 3 *supra*. These changes include the stipulation entered into by Lloyds, NYTCO and Bank of Brewton and the potential conflict of interest problem raised by Lloyds, which necessitated a dissolution of the original attorney-client relation between plaintiffs' attorneys and Bank of Brewton. Under these circumstances, matters of whether to award fees and, if so, in what amount, are left to the sound discretion of the trial court. *City of Birmingham v. Bouldin*, 280 Ala. 85, 190 So.2d 279, 280–81 (1966); *Ingalls v. Hare*, 266 Ala. 221, 96 So.2d 266, 274 (1957).[8] A common fund is not created every time an attorney for a mortgagor recovers insurance monies for a loss on mortgaged property. Here, however, the mortgagors were deeply in debt; their creditors held otherwise worthless claims; the mortgagee had settled its claim and was only a nominal party; and the original fee contract had become ineffective because of changed circumstances. The district court properly exercised its discretion.[9]

### D. *Priority of Claims on the Fund*

■ The district court correctly concluded that the claims of the Foshees' attorneys were superior to the rights of any other party to the funds. This result avoids the inequitable result of allowing Lloyds and NYTCO to participate in the fund without first reimbursing those responsible for creating it. Section 34–3–61 of the Alabama Code mandates this result:

> (c) Upon all actions for the recovery of real or personal property, and upon all judgments for the recovery of the same, attorneys-at-law shall have a lien on the property recovered, for their fees, superior to all liens but liens for taxes, which

may be enforced by said attorneys-at-law, or their lawful representatives, as liens on personal and real estate, and the property recovered shall remain subject to said liens, unless transferred to bona fide purchasers without notice.

*E. g., United States Fidelity & Guaranty Co. v. Levy*, 77 F.2d 972, 976 (5th Cir. 1935).

### E. *Distribution of the Remainder of the Fund*

■ The remaining funds are properly divided between NYTCO and Lloyds in proportion to their interests as assignees of Bank of Brewton, respectively 14.68 percent and 85.32 percent. As the district court determined in its opinion of January 30, 1978,

> [T]he equitable reasons supporting the result in *Watts* and *Tarrant Land Company* [section B *supra*] do not apply in this case. As long as the Foshees are given a credit against their debt on the notes for the amount of the insurance payment made to the Bank of Brewton, *see Pacific National Fire Insurance Co. v. Watts, supra*, permitting Lloyds to recover as an assignee of the notes will not harm the Foshees. They will receive the full benefit of their insurance as determined by the jury; and their liability on the mortgage notes will be virtually extinguished. Although Lloyds will recover part of the monies which it paid into Court as the Foshees' insurer, such a recovery is not inequitable.[6]

> [6] Indeed, to deny Lloyds' right to recovery would result in an unearned windfall to the Foshees, allowing them to escape approximately $90,000.00 owed on the notes (assuming the face value of the notes is about $530,000). Certainly Lloyds has a greater claim to the windfall than the Foshees by virtue of the risk it took by agreeing to the stipulation with the Bank.

8. Lloyds argues that the amount of fees awarded was unreasonable. We fail to find any error in the trial court's application of the principles of *Ingalls v. Hare*, 266 Ala. 221, 96 So.2d 266, at 274. *See also Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

9. Because NYTCO's attorneys rendered substantial assistance in the creation of the fund, the award of fees to the Foshees' attorneys in an amount equal to the full value of their services represents a pro-rata share of the costs of creating the fund. NYTCO's attorneys do not receive compensation because they, unlike the Foshees' attorneys, did not directly seek to establish the fund. For the NYTCO attorneys the fund's creation was only an incidental benefit of their efforts to avoid liability for their client. *See Lewis v. Railroad Retirement Bd.*, 256 Ala. 430, 54 So.2d 777, 781–82 (1951).

**1112**

We would qualify the views of the district court to note that the Foshees are not liable under the mortgage notes. An action on the notes brought in state court by Bank of Brewton was dismissed with prejudice against Bank of Brewton and its assignees for failure to prosecute. That no enforceable claim now exists against the Foshees under the notes, and that neither the Foshees nor their creditors, note 6 *supra*, are making claims against the fund, strengthen the conclusion reached by the district court.

AFFIRMED.