530 So.2d 1371 (1988)
ALABAMA FARM BUREAU MUTUAL CASUALTY INSURANCE COMPANY, INC.
v.
Alfred W. WILLIAMS, et al.
86-1278.
Supreme Court of Alabama.
July 8, 1988.
Rehearing Denied August 26, 1988.
*1372 Edward R. Jackson of Tweedy, Jackson & Beech, Jasper, for appellant.
Robert T. Wilson and Garve Ivey, Jr., of Wilson & King, Jasper, for appellees.
TORBERT, Chief Justice.
This is an appeal by defendant Alabama Farm Bureau Mutual Casualty Insurance Company (hereinafter "Farm Bureau"), from a judgment entered on a jury verdict in favor of the plaintiffs, Alfred Williams and Frances Williams, in an action to recover on an insurance policy. The relevant facts are as follows:
In March 1981, the Williamses took out a policy of fire insurance with Farm Bureau through Farm Bureau's agent, defendant Jimmy Holderfield, on a house owned by them and financed with First Federal Savings and Loan Association of Jasper, Alabama (hereinafter "First Federal"). First Federal was named as the loss payee on the insurance policy as its interest appeared. The Williamses paid the premiums for the insurance to First Federal at the rate of 1/12th of the annual premium per month. First Federal was to pay the premiums on the policy to Farm Bureau.
Between December 1982 and March 11, 1983, there arose some problem with the coverage on the Williamses' dwelling. The facts surrounding the coverage and the contract of insurance were for the most part disputed. However, the undisputed facts show that some time in February 1983, defendant Holderfield notified First Federal to discontinue paying the premium until he advised differently. After receiving this message, and contrary to its own internal policy, First Federal inadvertently placed the loan file on the Williamses' home back in its filing cabinets without having ascertained whether there was any coverage on their dwelling. Mr. and Mrs. Williams, thinking they had insurance, continued to pay the premium to First Federal. First Federal failed to pay the premium to Farm Bureau. The Williamses' house burned on December 30, 1983. They subsequently made a claim to Farm Bureau, which was declined; according to Farm Bureau it was denied for failure to pay the premium and because the policy had been non-renewed.
The Williamses filed suit on May 11, 1984, naming as defendants Farm Bureau, Holderfield, and First Federal. The complaint contained three counts. The first count was for breach of contract against Farm Bureau and Holderfield for failing to pay the plaintiffs' loss claim and against First Federal for failing to pay the premiums on the policy when they came due. Count two was for negligence against all defendants, alleging that the defendants had injured the plaintiffs by negligently causing or allowing their fire policy to lapse. Count three alleged fraud against Holderfield and Farm Bureau.
Shortly before trial, First Federal was dismissed from the case by order of the trial court pursuant to a pro tanto settlement agreement and release entered into between the Williamses and First Federal. *1373 The case went to the jury against Holderfield and Farm Bureau on the breach of contract and fraud counts. The jury returned a verdict in favor of the plaintiffs for breach of contract and for the defendants on fraud. The trial court subsequently entered a judgment on the plaintiffs' verdict in the amount of $74,800.00, plus interest at 6% from December 30, 1983, the date of the loss, until February 5, 1987.

I.
At trial, Farm Bureau made an offer of proof to show that the plaintiffs had executed a pro tanto settlement and release with defendant First Federal. That offer, which was made outside the presence of the jury, showed that the pro tanto agreement released First Federal from liability for anything arising out of the fire loss of the Williamses' residence, for the sum of $46,337.06. First Federal agreed to apply that amount against the mortgage indebtedness it had outstanding on the Williamses' property. The outstanding indebtedness at that time was $46,337.06, and thus, the mortgage debt was extinguished. Furthermore, First Federal disclaimed any interest in any proceeds recovered by the Williamses in their pending action against Farm Bureau and Holderfield. The trial court denied this offer of proof.
Farm Bureau argues that it is entitled to plead and prove the existence of the pro tanto settlement in order to mitigate its liability. Appellant reasons that the liability and obligations of First Federal and itself are joint and, therefore, because the plaintiffs suffered only one injury, that it should be allowed to produce as evidence the fact of the partial satisfaction to mitigate or reduce the damages for which it ultimately may be found liable, just as in the case of joint tort-feasors. See generally, Williams v. Colquett, 272 Ala. 577, 133 So.2d 364 (1961); Steenhuis v. Holland, 217 Ala. 105, 115 So. 2 (1927).
Appellees, the Williamses, argue that the obligations under the respective contracts of First Federal and Farm Bureau are separate and distinct. They conclude that the evidence of the pro tanto release was properly excluded because First Federal was not a party to the contract of insurance.
We are of the opinion that appellant's joint liability theory must fail for the simple reason that there is no evidence that appellant and First Federal either undertook or assumed any joint obligation toward the Williamses. We agree with the Williamses that the obligations owing them from Farm Bureau and First Federal are separate and distinct. The evidence shows that Farm Bureau contracted with the Williamses to provide fire insurance on their house. On the other hand, the only obligation assumed by First Federal was to act as an escrow agent for the Williamses for the payment of the insurance premiums on their home. Furthermore, we do not accept appellant's argument that if the breach of different contractual obligations produces only one injury then evidence of a pro tanto settlement agreement should be allowed into evidence. The appellant has not cited this Court to any authority to support such a proposition.
Next, appellant argues that the "mortgagor or property owner, plaintiffs in this case, could not have brought and maintained an action for the full balance of the property or money because according to the terms of the insuring agreement, the insurer had an obligation to satisfy the outstanding mortgage and would only owe the difference, if any, between the contract limit and the mortgage pay off to the insured property owner." In support of this proposition, appellant cites Fireman's Fund Ins. Co. v. Thomas, 275 Ala. 445, 155 So.2d 923 (1963), and Levine v. Insurance Co. of North America, 440 F.2d 679 (5th Cir.1971). The appellant's argument can be reduced to the following proposition: at the time of the loss, Farm Bureau became obligated to pay off the outstanding mortgage on the Williamses' property in addition to paying the Williamses the difference between the mortgage pay off and the amount of the coverage under the policy; because there is no outstanding mortgage indebtedness, it follows that appellant's only liability to the Williamses is to pay off *1374 the mortgage indebtedness-policy coverage differential.
The insurance policy in question contains the following provision:
"12). Mortgage Clause ... If a mortgagee is named in this policy, any loss payable ... shall be paid to the mortgagee and you, as interests appear."
First Federal is named in the policy as the mortgagee-loss payee.
It is true that under a mortgagee loss payable clause, such as the one contained in this insurance policy, a mortgagor-insured can sue the insurer on the policy only for the balance remaining after deducting the amount due on the mortgage from the loss recoverable under the insurance policy. Levine v. Insurance Co. of North America, 440 F.2d 679 (5th Cir. 1971); Capital City Ins. Co. v. Jones, 128 Ala. 361, 30 So. 674 (1900). In such a case, the burden is upon the insured to show that there is a balance after deducting the amount due on the mortgage indebtedness from the amount recoverable under the insurance policy. Home Ins. Co. of New York v. Tumlin, 241 Ala. 356, 2 So.2d 435 (1941); Jones, supra. The insurer has, in effect, agreed to a division in the amount of its liability for the damage or loss between the insured and the mortgagee. The mortgagee has the first right to the insurance proceeds to the extent of the amount owing it by the insured, not exceeding the total liability of the insurer under the policy; and the insured is entitled to the balance of the amount of such liability. New Hampshire Fire Ins. Co. v. Curtis, 264 Ala. 137, 85 So.2d 441 (1955).
Nonetheless, a review of the cases where these principles of law have been applied reveals a decisive distinction between those cases and the present case. Namely, in the present case, there was no mortgage existing at the time the case went to trial. In this regard, we are of the opinion that the cases relied on by the appellant are inapposite. It must, therefore, be determined whether an insurer is entitled to prove as a defense to liability or as a mitigation of liability under its fire insurance contract, that the mortgage on the insured homeowner's property has been satisfied and released by the mortgagee. We answer in the negative.
A policy of fire insurance, after the loss covered thereby is fixed, is nothing more than a contract for the payment of the money due under the policy. Fireman's Fund Ins. Co. v. Thomas, 275 Ala. 445, 155 So.2d 923 (1963); Capital City Ins. Co. v. Jones, 128 Ala. 361, 30 So. 674 (1900). Based upon this principle, the appellant became obligated to pay the full amount of the policy, which the jury found to be in full force and effect, at the time of the loss. As the court held in Milwaukee Mechanics Ins. Co. v. Maples, 37 Ala.App. 74, 85, 66 So.2d 159, 167 (1953), cert. denied, 259 Ala. 189, 66 So.2d 173 (1953), "[the insurer's] liability must, under the contract, be measured by the fire damage at the time of the loss and not by fortuitous circumstances later befalling the insured and to which [the insurer] was in no wise privy." The insurance company's duty is to respond to the party with whom it made the contract of insurance, and its liability is measured by the terms of its contract and not by the terms of an agreement between the insured and a third party. National Security Fire & Casualty Co. v. Miller, 394 So.2d 31 (Ala.Civ.App.1980), cert. denied, 394 So.2d 33 (Ala.1981); Maples, supra.
In New Hampshire Fire Ins. Co. v. Curtis, 264 Ala. 137, 85 So.2d 441 (1955), the insured sued his insurer on a policy of insurance covering a tractor-trailer for the damages sustained by the tractor-trailer in an accident. At the time of the accident, the insured owed a debt on the tractor-trailer and a creditor had an interest in the tractor-trailer as conditional seller. Under the terms of the insurance policy, any loss payable was payable to the insured's creditor and the insured "as their interests in the property insured ... may appear." In response to the insured's claim of error in the giving of an oral charge to the effect that, if the insured's creditor had a right to repossess the tractor-trailer and did so repossess it, the creditor was not deprived of its right to collect under the insurance policy *1375 the amount due it from the insured, this Court held as follows:
"The evidence shows that the accident occurred on November 22, 1953, and that the acceptance corporation repossessed the wreckage or salvage on February 3, 1954, which was before the insurance company made any adjustment of the loss or paid the acceptance corporation anything in respect to it. This adjustment was made on April 27, 1954. The salvage was sold by the acceptance corporation for $1,800. So that, if on April 27, 1954, the plaintiff was not indebted to the acceptance corporation in any sum, the entire amount of liability for the loss was payable to plaintiff. It is not important that the repossession occurred subsequent to the wreck. The rights of plaintiff and of the acceptance corporation, respectively, were but an apportionment of the insurer's liability and that apportionment could be altered by a change of circumstances at any time before a settlement was made with the acceptance corporation. Aetna Ins. Co. v. Koonce, [233 Ala. 265, 171 So. 269 (1936) ]."
Curtis, supra, 264 Ala. at 141, 85 So.2d at 445. (Emphasis added).
In Aetna Ins. Co. v. Koonce, supra, this Court stated:
"If it appeared the mortgage debt had been fully paid by the mortgagor pending the suit, and while the entire subject-matter of the suit, as well as the parties, was within the jurisdiction of the court, so that one of the parties plaintiff [i.e., the mortgagee] was no longer interested in the fruits of the litigation, and the other party [the mortgagor-insured], through the performance of his contractual obligations, had become entitled to the full recovery, there would no longer be any necessity to retain the mortgagee as party plaintiff."
233 Ala. at 267-68, 171 So. at 270-71. Although the foregoing proposition was enunciated for the purpose of determining the proper parties to bring an action against the insurer, we are of the opinion that the Curtis decision properly applied the rule stated in Koonce. Moreover, we are also of the opinion that the court in Foshee v. Lloyds, New York, 619 F.2d 1104 (5th Cir. 1980), correctly stated the rule in Alabama to be as follows:
"Under Alabama law, if a mortgagor satisfies or settles a mortgage debt owed to the mortgagee pending a suit against the insurer, the mortgagor becomes entitled to the full recovery under the policy and no windfall accrues to the insurer. Aetna Ins. Co. v. Koonce, 233 Ala. 265, 171 So. 269, 270-71 (1936)."
619 F.2d at 1109. We also agree with that court that in a case such as this, the relevant question is, what is the mortgagee's interest?
In the present case, at the time of the loss First Federal acquired an interest in the insurance proceeds to the extent of the outstanding mortgage on the Williamses' property; the Williamses acquired an interest in the balance up to the policy limit. Capital City Ins. Co. v. Jones, supra. Farm Bureau was obligated to pay the full amount of the policy and its only concern was how to apportion that liability between its insured and its insured's mortgagee. Curtis, supra. Upon the execution of the pro tanto settlement and release in which First Federal disclaimed any interest in any proceeds recovered from the appellant, and the concomitant extinguishing of the outstanding mortgage debt on the Williamses' property, the Williamses became the exclusive beneficial owner of the whole money due from appellant under the insurance policy. Foshee, supra; Koonce, supra. This result is in accord with appellant's contractual obligation to pay any loss to the mortgagee and its insureds, the Williamses, as their interest appeared. Because the mortgagee, First Federal, has no interest in the mortgaged property, the mortgage debt having been extinguished, the full amount due under the policy became payable to the Williamses.
The appellant makes the argument that it is unfair to allow the Williamses to "have two satisfactions for one injury." In response thereto, we point out that appellant does not assert that it is being subjected to *1376 double liability. As this Court has stated, in circumstances such as the present, "[T]he insurer is primarily interested in protection against double liability." Koonce, 233 Ala. at 267, 171 So. at 271. Under the trial court's judgment in the present case, appellant does not suffer any "double liability"; it is merely being held to abide by the terms of its own contract to pay the full amount of the loss that it insured the plaintiffs against. We hold that the trial court did not err in excluding the evidence of the pro tanto settlement and release.

II.
The text of the verdict returned by the jury is as follows:
"We, the jury, find for the plaintiffs and against the defendants and assess damages at [here begins the handwritten portion of the verdict] value of policy plus interest_____
..."
"We find for the Plaintiffs only in Breech [sic] of contract
"We find for the defendants in case of fraud."
Appellant Farm Bureau argues in its new trial motion and on appeal that the verdict is incomplete and ambiguous and therefore not capable of forming the basis of the trial court's written judgment. Specifically, appellant points out that the jury's verdict did not set a specific dollar amount for its award. Appellant concludes that it was therefore reversible error for the trial court to go back to the record to determine what the "value of the policy" was in order to form the basis of its order.
The appellant also argues that the trial court erred by amending the jury verdict with respect to the addition of interest. The verdict simply stated that the plaintiffs, the Williamses, were to recover interest in addition to the "value of the policy." In its order, the trial court awarded the Williamses interest at 6% from December 30, 1983, the date of the loss, until February 5, 1987, the date of the trial. Farm Bureau argues that the trial court erred when it amended the jury verdict in this fashion.
The appellees maintain that the verdict is valid and perfectly capable of forming the basis of the trial court's judgment. They point out that the insurance declaration stating the amount of coverage and the applicable dates was in evidence.
Both parties rely on Merchants' Bank & Trust Co. v. J.A. Elliot & Son, 16 Ala.App. 620, 80 So. 624 (1918), in support of their respective positions. In that case, the Court of Appeals held that "every judgment of a court of law must either be perfect in itself or capable of being made perfect by reference to the pleadings, or to the papers on file in the cause, or else to other pertinent entries on the court docket; and in like manner verdicts of juries cannot be supplemented by intendment or by reference to mere extrinsic facts." 16 Ala.App. at 621, 80 So. at 625. (Emphasis added).
In W.T. Rawleigh Co. v. Hannon, 32 Ala.App. 147, 22 So.2d 603 (1945), the Court of Appeals summarized the law as to the sufficiency of jury verdicts as follows:
"There are certain principles that are basic. A verdict of the jury may be either oral or written. City of Birmingham v. Hawkins, 196 Ala. 127, 72 So. 25.
"Imperfect verdicts are classified generally as: (1) Defective in form. (2) Defective in substance.
"If a verdict responds in substance to every material fact involved in the issues in the cause, although it may be irregular or imperfect as to form, the court may correct the imperfections either with or without the consent of the jury. If a verdict fails to respond affirmatively or by necessary implication to the framed issues, it presents the vice of being defective in substance, in which event the court is powerless to substitute the necessary amendments. The duty rests upon the court, in the latter circumstance, to refuse to receive the verdict, but [it] should under appropriate instruction remand the jury for further deliberation to the end that necessary corrections be made in keeping with matters to be determined and the findings and conclusions of the jury relating to same. If the *1377 court should aid the verdict of the jury which is faulty as to substance, without the consent and concurrence of the jury, it would then become not the verdict of the jury, but of the court. [Citations omitted.]
"It is not infrequent that juries through mistake, misunderstanding, inadvertence or for other causes, bring into court verdicts that are faulty in substance. If the error is not corrected in the manner above stated, the offended litigant must find relief by resorting to an application to the court through the medium of a motion to have the verdict set aside and a new trial ordered. [Citations omitted]."
32 Ala.App. at 149, 22 So.2d at 604.
To recapitulate, a court's right to amend a jury verdict after discharge of the jury is limited to matters of form or clerical errors that are apparent from the record and it does not extend to matters of substance required to be passed upon by the jury. Alexiou v. Christu, 285 Ala. 346, 232 So.2d 595 (1970). However, where the language of judgments or verdicts can be reasonably interpreted by reference to the pleadings and papers in the case and the instructions of the court, then on such a basis intendments are indulged in favor of judgments. The real question is whether the verdict was hopelessly defective, so as to afford no proper basis for a judgment. Reynolds Bros. Lumber Co. v. W.S. Newell Const. Co., 284 Ala. 352, 224 So.2d 899 (1969).
Although this Court has never had occasion to address the specific issue presented, we are of the view that the verdict in question comes within the classification of being imperfect or defective in form. Stated differently, the verdict is not so hopelessly defective as to provide no reasonable basis for the judgment. We quote with approval from Corpus Juris Secundum the following:
"As a general rule, where the jury have failed to insert in the verdict the amount of recovery, and it is impossible definitely to ascertain the amount intended to be allowed, the court cannot fix and insert the amount of recovery; but it has been held that, where there is no dispute as to the amount of recovery, or it is so indicated by the pleadings and evidence that it can be clearly and certainly ascertained by what is simply a process of mathematical calculation, a verdict for plaintiff which does not give the amount of recovery may be corrected by an insertion of the amount, even after the jury have been discharged. Clerical or formal errors in the statement as to the amount of recovery may be corrected, and the verdict put in such form as properly to express the intention of the jury, where the intention of the jury with respect thereto is clearly ascertainable."

89 C.J.S. Trial § 517, at 202-03 (1955) (footnotes omitted; emphasis added). See, also, Annot., 49 A.L.R.2d 1328 (1956).
It is clear that the jury resolved the issue of policy coverage in favor of the Williamses. Moreover, the jury awarded the Williamses as damages the "value of the policy." Farm Bureau argues that there was never any determination of what "the value of the policy" was and, therefore, that the trial court impermissibly substituted its judgment for what it thought the jury intended. We disagree.
The main issue contested at trial was not the amount of insurance coverage on the Williamses' home; the central issue was whether there existed any coverage at all. As noted, the jury resolved that issue in favor of the Williamses. There was really no dispute as to the potential amount of coverage on the Williamses' house on the date of the loss. Both parties introduced into evidence a declaration of insurance coverage that states the coverage on the Williamses' dwelling to be $74,800.00. The stated coverage dates are March 11, 1983, to March 11, 1984. The loss occurred December 30, 1983, and the evidence showed that the house was a total loss.
Given this background, we think the intent of the jury was clear. It was not error for the trial court to amend the verdict in its written final order and judgment. The substance of the verdict was plain and the trial court had the right to amend the form to conform to the issues and the evidence and thereby give effect to what the jury undoubtedly determined.
*1378 The appellant points out that there were other items of listed coverage on the declaration of insurance coverage. First, the amendment of the verdict to require appellant to pay only the coverage on the dwelling did not prejudice the appellant, as that amount was clearly warranted by the evidence, the jury having found the policy to be in force. Second, there was no evidence to support a loss recovery for damage to "personal property," as the evidence showed that the house was empty at the time of the loss. Likewise, there was also no evidence of "loss of use" damages or damage to "other structures." It is thus clear that by use of the language "the value of the policy," the jury intended that the Williamses recover only for the fire loss to their "dwelling," which the evidence showed was the only element of coverage they were entitled to collect.
However, we agree with the appellant that there was no basis for the trial court to amend the verdict with regard to the recovery of interest. It is an established principle that, with respect to a casualty policy, an insured is entitled to collect interest only from the date the loss should have been paid to the date of trial. Alabama Code (1975), § 8-8-8; Great American Ins. Co. v. Railroad Furniture & Salvage Co. of Mobile, 276 Ala. 394, 162 So.2d 488 (1964); Home Insurance Co. v. Adler, 71 Ala. 516 (1882). See, generally, Couch on Insurance 2d § 54:196 (Rev. ed. 1983). Under the terms of the insurance policy in question, any loss was payable, at the earliest, 60 days after proof of the loss. We agree with the appellant that, not only was it error for the trial court to decide the date from which interest was to run on the jury's award, but also, the date that it chose, the date of the fire loss, was incorrect. As noted, the earliest date from which interest could have run was 60 days after "proof of the loss." More important, however, is the fact that the appellees were not entitled to recover interest, as they failed to introduce evidence as to the date the proof of loss was filed. 47 C.J.S. Interest and Usury, §§ 83-85 (1982). It is improper for a court to amend a jury verdict in order to compute recoverable interest where there is nothing in the pleadings or evidence that shows the date from which the interest is to be computed. 76 Am. Jur.2d Trial, § 1211 (1975); 89 C.J.S. Trial, § 517 (1955). We conclude that the trial court erred in calculating interest on the jury's damages award. However, we affirm the judgment of the trial court, conditioned on the appellees' acceptance of a remittitur of the award of interest. In the event that the appellees do not accept a remittitur, the appellant is entitled to a new trial.[1]
We have considered appellant's other ground of alleged error and have found it to be without merit. We therefore affirm the judgment of the trial court, with the condition that the plaintiffs accept the judgment without interest.
AFFIRMED CONDITIONALLY.
JONES, SHORES, BEATTY and ADAMS, JJ., concur.
NOTES
[1] Although the appellant would have been entitled to a directed verdict on the issue of recoverable interest, it did not request one. The appellant is entitled to no more relief than that prayed for.